## UNITED STATES COURT OF INTERNATIONAL TRADE

### BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

——————————————————————————x
    :
NEIMENGGU FUFENG BIOTECHNOLOGIES :
CO., SHANDONG FUFUENG FERMENTATION :
CO., LTD., and XINJIANG FUFENG :
BIOTECHNOLOGIES CO., LTD., :
    :
    Plaintiffs, :
    :    Consol. Court No. 23-00068
    and :
    :
MEIHUA GROUP INTERNATIONAL (HONG :
KONG) LIMITED and XINJIANG MEIHUA :
AMINO ACID CO., LTD., :
    :
    Consolidated Plaintiffs, :
    :
    v. :
    :
UNITED STATES, :
    :
    Defendant, :
    :
——————————————————————————x

### PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE AGENCY RECORD

Ned H. Marshak*
Dharmendra N. Choudhary
Jordan C. Kahn

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

*599 Lexington Ave FL 36,
New York, NY 10022
(212) 557-4000

1201 New York Ave., NW, Suite 650
Washington, DC 20005
(202) 783-6881

*Counsel for Plaintiffs Neimenggu Fufeng Biotechnologies Co., Shandong Fufeng Fermentation Co., Ltd., and Xinjiang Fufeng Biotechnologies Co., Ltd.*

Dated: May 3, 2024

## TABLE OF CONTENTS

I.   FUFENG'S CHALLENGE TO COMMERCE'S ENERGY COAL VALUATION IS NOT BARRED BY EXHAUSTION ............................................................................... 2

II.  COMMERCE'S DECISION TO DIRECTLY VALUE ENERGY IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE ...................................................................... 9

III. COMMERCE UNLAWFULLY DEDUCTED SECTION 301 DUTIES FROM U.S. PRICE ......................................................................................................................... 13

IV.  THIS COURT SHOULD NOT DISMISS FUFENG'S CHALLENGE TO COMMERCE'S COHEN'S $d$ METHODOLOGY ............................................................................ 15

CONCLUSION ....................................................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ABB Inc. v. United States*
190 F. Supp. 3d 1159 (CIT 2016) ........................................................................7, 8, 9

*ABB, Inc. v. United States*,
920 F.3d 811 (Fed. Cir. 2019) .................................................................................9

*Algoma Steel Corp. v. United States*,
865 F.2d 240 (Fed. Cir. 1989) ...............................................................................14

*Best Mattresses Int'l Co. v. United States*,
622 F. Supp. 3d 1347 (CIT 2023) ..........................................................................16

*Boomerang Tube LLC v. United States*,
856 F.3d 908 (Fed. Cir. 2017) .................................................................................6

*Ellwood City Forge Co. v. United States*,
582 F. Supp. 3d 1259 (CIT 2022) ........................................................................5, 6

*Mid Continent Steel & Wire, Inc. v. United States*,
31 F.4th 1367 (Fed. Cir. 2022) ..............................................................................16

*Qingdao Ge Rui Da Rubber Co v. United States*,
664 F. Supp. 3d 1369 (CIT 2023) ...........................................................................5

*Shanghai Tainai Bearing Co. v. United States*.
658 F. Supp. 3d 1269 (CIT 2023) .............................................................13, 14, 15

*Stratoflex, Inc. v. Aeroquip Corp.*,
713 F.2d 1530 (Fed. Cir. 1983) .............................................................................16

*Stupp Corp. v. United States*,
5 F.4th 1341 (Fed. Cir. 2021) ................................................................................16

*Ticaret A.S. v. United States*,
63 F.4th 25 (Fed. Cir. 2023) ..................................................................................13

*Unicatch Industrial Co. v. United States*,
422 F. Supp. 3d 1355 (CIT 2019) .........................................................................6, 7

*Wheatland Tube Co. v. United States*,
495 F.3d 1355 (Fed. Cir. 2007) .............................................................13, 14

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
716 F.3d 1370 (Fed. Cir. 2013) .............................................................................15

*Zhaoqing Tifo New Fibre Co. v. United States*,
  60 F. Supp. 3d 1328 (CIT 2015) ............................................................7

**Statutes**

19 U.S.C. § 1673 ............................................................................................15

19 U.S.C. § 1677 ............................................................................................13

**Regulations**

19 C.F.R. § 351.309 ..........................................................................................4

**Federal Register Notices**

*Chlorinated Isocyanurates from China*, 78 Fed. Reg. 4,386 (Jan 22, 2013)
  (final results) ..........................................................................................12, 13

*Xanthan Gum from China*, 87 Fed. Reg. 47,970 (Aug. 5, 2022)
  (preliminary results)......................................................................................3

*Xanthan Gum from China*, 88 Fed. Reg. 9861 (Feb. 2, 2023) (final results) ...................1, 3, 6, 17

Plaintiffs Neimenggu Fufeng Biotechnologies Co., Shandong Fufeng Fermentation Co., Ltd., and Xinjiang Fufeng Biotechnologies Co., Ltd. (collectively "Fufeng") reply to the Response Brief filed on February 27, 2024, by Defendant United States (the "Government"), ECF 31 ("Gov. Br."), opposing Fufeng's Rule 56.2 Motion for Judgment on the Agency Record (Oct. 30, 2023) ECF 25 ("Fufeng Br."). In its Opening Brief, Fufeng established that the U.S. Department of Commerce ("Commerce") erred in the eighth administrative review ("AR8") of the antidumping duty ("ADD") order on *Xanthan Gum from China*, 88 Fed. Reg. 9861 (Feb. 2, 2023), P.R. 241 ("*Final Results*"), Issues and Decision Memorandum ("IDM"), P.R. 233. *See* Fufeng Br. at 7-45. Commerce's legal errors in AR8 are not undermined by the Government's arguments because, as set forth in turn below:

1. Fufeng's challenge to Commerce's valuation of coal under Harmonized Tariff Schedule ("HTS") subheading 2701.12.9000 instead of 2701.19 is not barred by the exhaustion doctrine. Fufeng *de facto* exhausted this argument in its rebuttal brief, which Commerce unlawfully rejected. The Government relies on precedent that is either inapposite or supports Fufeng's position. Given Commerce's inexplicable divergence from its long well-established policy and its failure to put Fufeng on notice of this impending change, Fufeng was not obligated to have raised this argument in its Case Brief at Commerce. Fufeng therefore has the right, in this Civil Action, to challenge Commerce's incorrect direct coal valuation using HTS data plainly contradicted by the record;

2. Commerce's new methodology to obtain a direct surrogate value ("SV") for Fufeng's energy contradicts longstanding agency precedent, including the three preceding reviews and the AR8 preliminary decision, and results in less accurate ADD calculations;

3. Commerce unlawfully deducted Section 301 duties from U.S. price, because Section 301 duties are remedial with the objective of eliminating certain harmful Chinese government practices and are not normal U.S. import duties; and

4. Fufeng's challenge to Commerce's differential pricing analysis, which has been remanded on multiple occasions, should not be dismissed in the interest of judicial economy, to avoid wasting resources in the event that Fufeng's recalculated ADD rate is affected by this invalidated methodology.

# I.    FUFENG'S CHALLENGE TO COMMERCE'S ENERGY COAL VALUATION IS NOT BARRED BY EXHAUSTION

In its Opening Brief, Fufeng established that "Commerce unlawfully valued Fufeng's energy coal under HTS 2701.12.9000 instead of 2701.19." Fufeng Br. at 21 (capitalization modified). Fufeng also demonstrated that because "the heat value of its energy coal . . . is settled and is not an issue," *id*. at 23, Commerce's choice was "directly contrary to Commerce's established precedent, as affirmed by the Court." *Id*. at 25. The Government in response argues that "{t}he Court should not reach the merits of Fufeng's argument," claiming that "Fufeng failed to exhaust its administrative remedies with respect to this issue by failing to raise it in its administrative case brief." Gov. Br. at 19. As set forth below, the Government's argument should be rejected.

The Government argues that "Fufeng did not submit information on its coal when Commerce inquired." *Id*. at 19 (capitalization modified). This argument is undermined by the Government's unqualified concessions that: (1) Fufeng described "its coal inputs as having a heat value of less than 5,800 Kcal/kg"; and (2) "No parties sought to undermine or dispute this evidence before Commerce, nor is this issue in dispute before this Court." *Id*. at 28; *see* Fufeng Br. at 22-3. Based on these undisputed facts the classification of Fufeng's coal's under HTS 2701.19 is settled by operation of law – *i.e.* judicially noticeable by Harmonized System of Nomenclature Explanatory Notes under subheading Note 2 to Chapter 27, and multiple agency determinations and judicial decisions. Fufeng Br. at 22-25. The Government conspicuously avoids these critical facts. *See* Gov. Br. at 11-28.

Next, the Government asserts that "Fufeng failed to exhaust its administrative remedies with respect to Commerce's selection of an HTS number for coal," and thereby "frustrated the purpose of the exhaustion requirement, which is to give the agency the opportunity to consider

challenges." *Id*. at 23-24. In support, the Government misrepresents facts in claiming that "on September 12, 2022, Fufeng submitted a case brief that did not address Commerce's **valuation of energy**." *Id*. at 22. (emphasis added). However, contrary to the Government's assertion, Commerce did **not** value coal when issuing *Xanthan Gum from China*, 87 Fed. Reg. 47,970 (Aug. 5, 2022), P.R. 202 ("*Preliminary Results*"). Instead, Commerce at that time valued energy indirectly as part of ratios from a Malaysian financial statement. U.S. Department of Commerce Memorandum (July 29, 2022), P.R. 197-98 ("Preliminary SV Memo"), at 3; Section II, *infra*. Commerce manifestly did not value coal using HTS 2701.12.9000 in the Preliminary Results, despite including coal among a listing with scores of HTS subheadings. Preliminary SV Memo Attachment, Tab: Master. In so doing, Commerce merely listed a HTSUS proposed for coal by Petitioner CP Kelco. *Compare id. with* Petitioner Surrogate Values (Feb. 2, 2022), P.R. 110-113, Exhibit 1.

Indeed, the Government confirms that: "On the same day, CP Kelco submitted a case brief to Commerce arguing that Commerce should directly value Fufeng's energy factors." Gov. Br. at 22. As such, Fufeng was not put on notice that HTS 2701.12.9000 could be triggered to directly value coal in the *Final Results* until Petitioner specifically raised this point in its case brief. Petitioner Case Brief (Sept. 12, 2022), C.R.129, P.R. 211, at 5-15. Another reason notice was lacking was because Commerce had not valued Fufeng's coal in the final results of the fifth, sixth, and seventh administrative reviews ("AR5/6/7"), and the AR8 *Preliminary Results*. Fufeng Br. at 8-16; Prelim SV Memo at 3. These underlying facts support Fufeng's position that "{w}hen Petitioner contested Commerce's preliminary decision to not value Fufeng's energy coal input, Petitioner effectively argued Commerce should value energy coal in the *Final Results* using the Malaysian SV reported in HTS 2701.12.9000." Fufeng Br. at 28-29.

The Government unpersuasively responds that "CP Kelco's case brief made no mention of any HTS number to value coal," and that "Fufeng was therefore aware . . . that Commerce had selected an HTS number for coal that Fufeng had not proposed." Gov. Br. at 25. These claims are unavailing because the HTS subheading listed was merely a recital of Petitioner's proposed HTS 2701.12.9000, without relying on that HTS subheading for the valuation of coal. Preliminary SV Memo at 3, Attachment, Tab: Master. As such, HTS 2701.12.9000 was only put in play when Petitioner affirmatively argued that Commerce should value energy coal in that subheading and that is when Fufeng, for the first time, was placed on notice of the coal valuation HTS issue. *See* Petitioner Case Brief at 5-15. Therefore, the Government contention that "Fufeng does not provide an explanation for why it failed to raise this issue in its initial case brief, or even attempt to argue that it adequately exhausted its administrative remedies" is entirely without merit. Gov. Br. at 24.

Further, Fufeng timely and properly rebutted Petitioner's methodology to value coal based on its proposed HTS 2701.12.9000. Fufeng Rebuttal Brief (Sept. 21), C.R. 130, P.R. 214, at 1-37. Fufeng at that time proposed an alternative methodology "that the correct valuation of coal should be based on either HTS 2701.19 or an average of SVs reported in HTS subheadings 2701.12.9000 and 2701.19" Fufeng Br. at 29. There is no merit to the Government's claim that "Commerce appropriately rejected Fufeng's rebuttal brief because Fufeng failed to raise the issue of the HTS number for coal in its case brief" Gov. Br. at 24. Indeed, contrary to the Government's assertion, consistent with Commerce Regulations, Fufeng "'respond{ed} only to arguments raised in case briefs'" Gov. Br. at 23 (quoting 19 C.F.R. § 351.309(d)(2)). Commerce therefore improperly rejected Fufeng's Rebuttal Brief by requiring redaction of that Rebuttal Brief's discussion of coal valuation and Fufeng's opposition to Petitioner's Request to Reject.

4

*See* Fufeng Redacted Rebuttal Brief (Nov. 21), C.R. 132, P.R. 227, at 1-37; Fufeng Redacted

Rebuttal Brief (Dec. 14), C.R. 133, P.R. 231, at 1-37; Letter from GDLSK to U.S. Department of

Commerce (Nov. 21, 2022), P.R. 228.

      The Government's proffered judicial precedents to support Commerce's unlawful

rejection of Fufeng's Rebuttal Brief arguments are readily distinguishable. *See* Gov. Br. at 22-25.

In each of those cases, the concerned party – unlike Fufeng – failed to exhaust their

administrative remedies during the course of the administrative proceeding, as set forth below.

For example, this Court in *Qingdao Ge Rui Da Rubber Co v. United States* held that:

> . . . because **Plaintiff's argument before this court is distinct from that before the agency**, and the **agency had no opportunity to consider, in the first instance**, whether GRT's regulatory certification of accuracy to the entirety of GRT's questionnaire response, read with that questionnaire response, is reasonably read as a customer certification of non-use, Plaintiff failed to exhaust its administrative remedies.

664 F. Supp. 3d 1369, 1376 (CIT 2023) (emphases added).

      Unlike *Qingdao,* Commerce in AR8 had an "opportunity to consider, in the first

instance," *id*., Fufeng's argument to value coal "based on either HTS 2701.19 or an average of

SVs reported in HTS subheadings 2701.12.9000 and 2701.19" Fufeng Br. at 29. Further, because

Fufeng makes identical arguments to value coal before this Court as it did previously before

Commerce (which the agency not only unlawfully rejected, but also improperly removed from

the record to avoid its consideration by the agency), "Plaintiff's argument before this court is

{not} distinct from that before the agency." *Qingdao*, 664 F. Supp. 3d at 1376. Accordingly, the

twin underlying principles in *Qingdao* repudiate the Government's arguments and necessitate a

remand to Commerce to consider Fufeng's alternative coal HTS arguments.

      This Court's ruling in *Ellwood City Forge Co. v. United States* is distinguishable

because: "Ellwood City did not challenge Commerce's failure to perform an on-site verification

during the pendency of the administrative proceeding." 582 F. Supp. 3d 1259, 1271 (CIT 2022).

By contrast, because Fufeng in its (improperly redacted) Rebuttal Brief did challenge HTS

2701.12.9000 upon which Commerce relied on in the *Final Results*, Fufeng administratively

exhausted this argument. Fufeng Rebuttal Brief at 1-37. Likewise, this Court's ruling in *Unicatch*

*Industrial Co. v. United States* is distinguishable because unlike Fufeng, "Unicatch failed to

exhaust its administrative remedies and Commerce did not have the opportunity to consider the

precise argument at issue." 422 F. Supp. 3d 1355, 1361 (CIT 2019) (capitalization modified).

Similarly, the U.S. Court of Appeals for the Federal Circuit ("CAFC") decision in *Boomerang*

*Tube LLC v. United States* is readily distinguishable:

> **In its case brief, JESCO suggested using those data to calculate CV before**
> **Commerce. At that point, Boomerang and U.S. Steel had notice** of the
> potential that Commerce might use the Colombian data to calculate JESCO's CV
> profit. Indeed, Boomerang's rebuttal brief to Commerce reveals that it recognized
> JESCO's suggestion to use the Colombian data for CV profit and that Boomerang
> objected to that approach. **Unfortunately for Boomerang, its rebuttal brief**
> **made no mention of its current argument that the affiliated Colombian entity**
> **should be collapsed into the Duferco entity. As such, the argument was not**
> **exhausted before Commerce** and should not have been considered by the Trade
> Court.

856 F.3d 908, 913 (Fed. Cir. 2017) (emphases added).

*Boomerang* supports Fufeng's position that its coal valuation argument is not barred. In

AR8: "{I}n its case brief, {Petitioner implicitly} suggested using {HTS 2701.12.9000} to

calculate {coal value} before Commerce {and} at that point, . . . {Fufeng} had notice of the

potential that Commerce might use the {HTS 2701.12.9000} to calculate {Fufeng's coal value}."

*Id*. Unlike "Boomerang, {Fufeng's} rebuttal brief made . . . mention of its current argument

{about alternative coal HTS subheadings, and} as such, the argument was . . . exhausted before

Commerce." *Id*.; Fufeng Rebuttal Brief at 1-37. Indeed, as this Court recognized in *Unicatch*,

when presented with facts similar to AR8 in *Zhaoqing Tifo New Fibre Co. v. United States*, this

Court found that the argument was not barred by the exhaustion of administrative remedies:

> In *Zhaoqing Tifo*, the court provided three reasons for excusing the plaintiff's failure to present its arguments regarding the potential for double counting of energy inputs to the agency. First, the court noted that **unanticipated changes between the preliminary and final determinations** meant that judicial review constituted the plaintiff's "first meaningful opportunity to challenge Commerce's decision"; thus, the doctrine of administrative exhaustion did not apply . . . . Second, to the extent that the doctrine applied, the court further found that any failure by the plaintiff to raise its argument would be excused because the **petitioner "specifically and explicitly" raised the issue in its administrative rebuttal brief**.

*Unicatch*, 422 F. Supp. 3d at 1362 (emphases added) (quoting *Zhaoqing Tifo*, 60 F. Supp. 3d

1328, 1350, 1353 (CIT 2015)). As in *Zhaoqing Tifo*, in AR8 there were "unanticipated changes

between the preliminary and final determinations" regarding the valuation of coal and "{Fufeng}

'specifically and explicitly' raised the issue in its administrative rebuttal brief." *Id*. As such,

*Zhaoqing Tifo* – as summarized in *Unicatch* – repudiates the Government's position.

Further, the Government misplaces reliance on *ABB Inc. v. United States* in claiming that

"'{m}erely bringing up a general issue does not serve to 'exhaust all specific issues under that

general umbrella.'" Gov. Br. at 25 (quoting 190 F. Supp. 3d 1159, 1181 (CIT 2016) ("*ABB I*").

*ABB I* is distinguishable from the facts in this case because, by raising the precise alternative coal

HTS argument in its rebuttal brief, Fufeng did "exhaust all specific issues." *ABB I*, 190 F. Supp.

3d at 1181.

Notably, another issue decided in the above-referenced *ABB* decision, which was

affirmed by the CAFC, undermines the Government's position. In *ABB I*, this Court first

explained that the party did not exhaust its administrative remedies:

> In this case, ABB did not exhaust its administrative remedies. ABB's administrative case and rebuttal briefs do not make arguments about the treatment of commissions or whether a commission offset was granted, and ABB does not provide any citations in its briefing to this Court that would show that ABB made this argument to Commerce before the issuance of the Final Results.

190 F. Supp. 3d at 1184 (CIT 2016). Even so, this Court held that failure to administratively exhaust was waived on account of Commerce's divergence from its policy coupled with a lack of notice to the party:

> Despite Commerce's general policy with respect to the treatment of U.S. commissions incurred inside and outside the United States, the Preliminary Analysis Memo indicates that **Commerce was diverging from that policy**. . . . Nevertheless, Commerce did not discuss the implications of this divergence on whether it would provide a commission offset in this case. The Court finds that it is **not appropriate to require ABB to have exhausted its administrative remedies** in this case when Commerce failed to adequately address its treatment of commission offsets in the preliminary determination. Such **notice was necessary in this particular case** because Commerce indicated that it was not treating the U.S. commissions in accordance with its normal practice, but it did not explain the extent of its different treatment.

> The Court will remand this issue to Commerce for further clarification. Upon remand, Commerce is to explain its treatment of the respondents' U.S. commissions, the record basis for such treatment, whether such U.S. commissions result in the granting of commission offsets, and the legal and factual basis for the granting or denial of the commission offsets.

*Id*. (emphases added) (citation omitted).

Likewise, in AR8, because "Commerce was diverging from that policy {of not valuing energy coal and using HTS 2701.19 for energy coal, a} notice was necessary in this particular case{, absent which} it is not appropriate to require {Fufeng} to have exhausted its administrative remedies." *Id*. The CAFC affirmed:

> We conclude that, in this case, the court did not abuse its discretion in determining that it would not be appropriate to require ABB to have exhausted its administrative remedies. In our view, the circumstances identified by the court in *ABB I*—**Commerce's divergence from its general policy with respect to the treatment of U.S. commissions incurred inside and outside the United States and its failure to discuss the implications of this divergence for this case—**

constituted "**a strong contrary reason**" for departing from the mandate of
§ 2637(d). *See Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir.
2007) ("Although {the} statutory injunction is not absolute, it indicates a
congressional intent that, *absent a strong contrary reason*, the court should insist
that parties exhaust their remedies before the pertinent administrative agencies."
(emphasis added)). In other words, we conclude that legitimate, prudential
concerns warranted both waiver of ABB's failure to exhaust its administrative
remedies and a remand to Commerce for further consideration of the issue.

*ABB, Inc. v. United States*, 920 F.3d 811, 818 (Fed. Cir. 2019) (bold emphasis added; italicized

emphases in original). Because AR8 involves "Commerce's divergence from its general policy

with respect to {the valuation and HTS of coal}", there is "a strong contrary reason" that excuses

"{Fufeng from} exhaust{ing} their remedies before the pertinent administrative agencies." *Id*.

In sum, contrary to the Government's arguments, Fufeng's challenge to Commerce's

HTS selection and valuation of coal is not barred because Fufeng *de facto* exhausted this

argument in its rebuttal brief before Commerce, which the agency unlawfully rejected and

required to be redacted. Moreover, under this Court and the CAFC decisions in *ABB*, in light of

Commerce's inexplicable divergence from its long well-established policy and its failure to put

Fufeng on notice of this impending change, Fufeng was not obligated to have administratively

exhausted this argument.

## II.    COMMERCE'S DECISION TO DIRECTLY VALUE ENERGY IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

In its Opening Brief, Fufeng established that Commerce's new methodology in AR8 to

directly value Fufeng's energy factors of production ("FOP") instead of indirectly valuing them

as part of sales, general, and administrative expense ("SGA") ratios from the 2021 financial

statement of Ajinomoto (Malaysia) Berhad ("Ajinomoto") was distortive, unsupported by

substantial evidence, and contrary to Commerce's well-established precedent from AR5/6/7 of

this ADD order. Fufeng Br. at 8-21. As set forth below, the Government fails to salvage Commerce's new methodology.

The Government's first argument is that "Commerce was able to directly value Fufeng's energy factor of production — resulting in a more accurate dumping margin." Gov. Br. at 13. However, this argument is unsupported by substantial record evidence because the Government "fails to weigh the *presumably enhanced margin accuracy* (based on the direct valuation of energy FOPs) against the *actually reduced margin accuracy* (resulting from distorted overhead and SGA ratios)." Fufeng Br. at 19 (emphasis in original). Moreover, the Government concedes that "Ajinomoto's 2021 financial statements enabled Commerce to **partially, but not entirely**, isolate energy costs from overall SG&A" and that Commerce "effectively treat{ed} the line item for administrative and other expenses in its entirety as energy." Gov. Br. at 13-14 (emphasis added). Given these express limitations in Ajinomoto's 2021 financial statement, the Government was obligated to explain how, even without the threshold identification and segregation of energy costs, Commerce's jettisoning of its judicially affirmed methodology established in the *Citric Acid* line of cases was supported by substantial evidence and in accordance with law. *See* Fufeng Br. at 8-12.

Further, the Government misplaces reliance on the fact that "Ajinomoto's 2021 financial statements subdivided 'other operating expenses' into the two line items of 'selling and distribution expenses' and 'administrative and other expenses.'" Gov. Br. at 16. The Government argues that "because different information led to a different methodology, Commerce's determination is not arbitrary, but rather based on the unique record in this case." *Id*. Yet the Government fails to address Fufeng's core argument that "{t}he additional breakout of 'Administrative and Other expenses' under 'other operating expenses' in Ajinomoto's 2020-21

statement did not cause any material change in Ajinomoto's reporting of expenses, especially for its reporting of energy costs {. . . because} energy cost continues to be reported in the 2020-21 statement as an indivisible component of a line item." Fufeng Br. at 16. Accordingly, there is no merit to the Government retorts that "Fufeng fails to explain why this 'solitary change' in the record evidence is not sufficient to warrant Commerce's novel approach" and that "Fufeng does not explain why Commerce should have ignored this change." Gov. Br. at 17. This argument fails because Fufeng already established that the mere fact "that energy cost is embedded in a subset of 'other operating expenses'" line item does not constitute a material difference. Fufeng Br. at 17. The Government fails to support Commerce's rationale that a smaller size of the basket category line item containing the energy cost was sufficient to jettison *Citric Acid* in favor of the new methodology, given that it yields facially distortive overhead and SGA ratios.

The Government further argues that "Commerce's methodology contributes to accuracy {. . . as it} removes energy costs from the numerator of the SG&A ratio." Gov. Br. at 18. However, Fufeng already refuted this argument by demonstrating that this migration resulted in distorted ratio calculations through a two-step process. First: "The line item 'administrative and other expenses' includes two undisputed G&A expenses: (a) administrative expenses; and (b) non-energy portions of 'other expenses.'" Fufeng Br. at 18. Second, since both the numerator and the denominator in the SGA formula and the denominator in the overhead formula are rendered as distorted, "allocation of the entire line item, 'administrative and other expenses' to the 'Energy' category results in . . . both the overhead and SGA ratios {being} distorted." Fufeng Br. at 18-19. The Government's related argument that "Commerce's methodology avoids double-counting and therefore is not distortive," Gov. Br. at 18, is unavailing because double-counting of the energy cost was avoided even in the prior methodology.

Finally, the Government parrots Commerce's misplaced reliance on *Chlorinated Isocyanurates from China*, 78 Fed. Reg. 4,386 (Jan 22, 2013) (final results) ("*Chlor Iso*"). According to the Government, "in both situations Commerce based its decision to directly value energy on a line item in a surrogate financial statement that potentially contained other administrative expenses, citing the importance of accounting for an energy-intensive production process." Gov. Br. at 15. In its Opening Brief, Fufeng demonstrated that there was "a false equivalence between Ajinomoto's line item, 'administrative and other expenses' and {the *Chlor Iso* line item, 'rental, light, janitorial and security expenses.'" Fufeng Br. at 21. The Government sidesteps Fufeng's argument that while "'rental, light, janitorial and security expenses' is unambiguously and directly related to energy, . . . the nexus of 'administrative and other expenses' with energy cost is unclear and, at best, indirect." Fufeng Br. at 21. The Government likewise fails to address that:

> "rental, light, janitorial and security expenses" specifically enumerates 'light'—suggesting that energy cost is the predominant component of this line item . . . {while} the line item, "administrative and other expenses" contains only basket category terms, administrative expenses and other expenses, which suggests that non-energy costs are predominant in this line item.

*Id*.

As such, there is no agency precedent to support the Government's rationale that "classifying as energy a potentially overinclusive line item from the surrogate financial statement enables Commerce to directly value energy when considering an energy-intensive process." Gov. Br. at 17. Moreover, this rationale was repudiated in the *Citric Acid* line of cases involving similarly overinclusive line items containing energy costs. *See* Fufeng Br. at 8-12. Further, in order to escape addressing Fufeng's false equivalence argument, the Government claims that "factual comparisons between the two cases are inappropriate, not least because the financial

statements which Commerce relied upon in *Chlorinated Isos* are not part of the record of this proceeding." Gov. Br. at 16. This argument is without merit because the Government fails to explain how the absence of the *Chol Iso* financial statement is prejudicial to Fufeng's argument while allegedly supporting the Government's position. In sum, the Government fails in its attempt to employ *Chlorinated Isos* to distinguish the *Citric Acid* line of cases (adopted in AR 5/6/7) and to support the new methodology Commerce used in AR 8.

### III. COMMERCE UNLAWFULLY DEDUCTED SECTION 301 DUTIES FROM U.S. PRICE

In its Opening Brief, Fufeng demonstrated that Commerce unlawfully deducted Section 301 duties from U.S. price, violating the statutory directive to deduct only normal "United States import duties," not special duties. 19 U.S.C. § 1677a(c)(2)(A); Fufeng Br. at 30-37. Such deduction was improper because Section 301 duties are: remedial with the objective of eliminating certain harmful Chinese government practices; and not normal U.S. import duties. Fufeng Br. at 30-35. At issue in AR8 is whether Section 301 duties are special duties, alongside ADD and Section 201 duties discussed in *Wheatland Tube Co. v. United States*, 495 F.3d 1355, 1361 (Fed. Cir. 2007)), or whether they are normal duties such as Section 232 duties subject to *Borusan Mannesmann Boru Sanyi ve Ticaret A.S. v. United States*, 63 F.4th 25, 35 (Fed. Cir. 2023). As set forth below, this Court should decline the Government's invitations to extend *Borusan* and follow *Shanghai Tainai Bearing Co. v. United States*. 658 F. Supp. 3d 1269, 1291-94 (CIT 2023). Gov. Br. at 30-33.

The CAFC decision affirming Commerce's action with respect to Section 232 duties—because they addressed the "national security . . . threat{} by the unsustainably low utilization of domestic steel-producing capacity"—is readily distinguishable from the Section 301 duties. *Borusan*, 63 F.4th at 35. Like Section 201 duties, but unlike Section 232 duties, Section 301

duties serve a trade-related, remedial purpose. Jinko Br. at 43. Further, this Court should not

follow *Shanghai Tainai*, which is of course not binding. *Algoma Steel Corp. v. United*

*States,* 865 F.2d 240, 243 n.4 (Fed. Cir. 1989). *Shanghai Tainai* affirmed Commerce's deduction

of Section 301 duties by improperly extending *Borusan* despite Section 232 duties having a

materially different purpose of safeguarding national security rather than providing trade

remedies:

> {T}he Notice of Action Pursuant to Section 301, 83 Fed. Reg. 40,823 (U.S. Trade
> Rep. Aug. 16, 2018), also refers to the Section 301 duty as an "additional duty."
> *Id.* at 40,824. . . . The rates of duty applicable to products of China . . . *apply in*
> *addition to all other applicable duties, fees, exactions, and charges.*" *Id.* at 40,824
> (emphasis added). This language tracks that of Proclamation 9705, which
> "directed that the {Section 232 duty} was to be imposed 'in addition to any other
> duties, fees, exactions, and charges applicable to such imported steel articles.' "
> *Borusan*, 63 F.4th at 29 (quoting Proclamation 9705, 83 Fed. Reg. at 11,627).
> Under *Borusan*, Commerce's decision to treat Section 301 duties as deductible
> "United States import duties" is correct.

658 F. Supp. 3d at 1293.

*Shanghai Tainai* also sidestepped analyzing Section 301 duties per the *Wheatland Tube*

factors – whether ordinary or special, whether permanent or temporary – by simply resting its

decision on *Borusan*, which focused on Section 232 duties driven by national security concerns:

> *Borusan* instructs that it is the text of the legal order levying duties that is
> paramount; and it is unnecessary for a reviewing court to apply the *Wheatland*
> *Tube* factors where that text has spoken clearly. *See Borusan*, 63 F.4th at 36 ("We
> do not decide whether {the holding} could soundly rest on distinctions between
> § 232 and the § 201 regime more generally, and the distinction between 'normal'
> and 'special' duties . . . . That approach presents challenges that we may avoid.
> The Commerce decision sufficiently rests on the proclamation-specific basis set
> forth above."). If the legal instrument enacting statutory duties provides that such
> duties are intended to be additional to existing duties, then it is reasonable for
> Commerce to treat them as "United States import duties" and deduct them from
> the U.S. price when calculating dumping margins. **This principle, as elucidated**
> **in *Borusan*, extends beyond Section 232 duties and applies to other statutory**
> **duties.** . . . Here, "the particular exercise of the authority" to enact the Section 301
> duties at issue intended for these duties to be additional to {ADD}.

*Id.* (emphasis added).

The Government's requested extension of *Borusan* to Section 301 duties is not supported by the CAFC precedent or other controlling law. For example, ADD is assessed pursuant to statutory language similar to the statutory language authorizing collection of Section 301 duties. *See* 19 U.S.C. § 1673 ("there shall be imposed upon such merchandise an {ADD}, *in addition to any other duty* imposed") (emphasis added). Yet ADD is not deducted from the U.S. sale price, based on the purpose underlying the imposition of such special duties (trade remedies) and the effect of deducting them from the U.S. sale price (double-counting). Indeed, the CAFC instructs that, in determining ADD margins, "{f}orm should be disregarded for substance." *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013).

Accordingly, this Court should not follow *Shanghai Tainai*, but instead should reverse Commerce's Section 301 duty deduction.

## IV.    THIS COURT SHOULD NOT DISMISS FUFENG'S CHALLENGE TO COMMERCE'S COHEN'S *d* METHODOLOGY

In its Opening Brief, Fufeng demonstrated that Commerce unlawfully applied its Cohen's *d* methodology. Fufeng Br. at 37-45. In response, the Government asks that this Court dismiss this Cause of Action because "Fufeng lacks standing to challenge Commerce's application of the Cohen's *d* test, because Fufeng cannot point to any injury that it has suffered." Gov. Br. at 9. Commerce plainly applied this methodology and found "that 88.30 percent of Fufeng's sales pass the *Cohen's d* test, confirming the existence of a pattern of prices that differ significantly among purchasers, regions, or time periods." U.S. Department of Commerce Memorandum (Feb. 1, 2023), C.R. 134, P.R. 234, at 7. Fufeng acknowledges that Commerce did thereafter:

> find that there is no meaningful difference between the weighted-average dumping margin calculated using the average-to-average method and the weighted-average dumping margin calculated using an alternative comparison

method based on applying the average-to-transaction method to those U.S. sales which passed the Cohen's *d* test and the average-to-average method to those sales which did not pass the Cohen's *d* test. Thus, for this final results, Commerce is applying the average-to-average method for all U.S. sales to calculate the weighted-average dumping margin for Fufeng.

*Id*. at 6-7.

This Court should nonetheless decline to dismiss Fufeng's differential pricing challenge because Commerce's flawed differential pricing analysis represents a barrier to any potential relief granted to Fufeng. The Government does not dispute that Commerce applied the same Cohen's *d* test to Fufeng that has been questioned by the CAFC. *Stupp Corp. v. United States*, 5 F.4th 1341 (Fed. Cir. 2021); *Mid Continent Steel & Wire, Inc. v. United States*, 31 F.4th 1367, 1377-81 (Fed. Cir. 2022). Continued application of the Cohen's *d* test upon remand could require additional rounds of briefing regarding an inflated ADD rate and would waste the resources of the Court and all parties to this proceeding. *See* Fufeng Br. at 37-45. In the interests of judicial economy, accuracy, and to avoid unnecessary repetition and duplicative efforts, this Court should not delay in remanding this issue to Commerce. *See Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1539 (Fed. Cir. 1983) ("The result being unchanged, a remand for reconsideration of the evidence would in this case constitute a waste of resources for the courts and the parties.").[1]

---

[1]     Fufeng respectfully disagrees with the contrary result ordered by this Court in *Best Mattresses Int'l Co. v. United States*, 622 F. Supp. 3d 1347, 1368-69 (CIT 2023), and asks this Court to reconsider to reconsider the analysis which led to its decision in that case.

## <u>CONCLUSION</u>

For the foregoing reasons, and those set forth in Fufeng's Opening Brief, Fufeng

respectfully requests that this Court remand the *Final Results* for reconsideration by Commerce.

Respectfully submitted,

*/s/ Dharmendra N. Choudhary*

Ned H. Marshak*
Dharmendra N. Choudhary
Jordan C. Kahn

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

*599 Lexington Avenue FL 36
New York, NY 10022
-and-
1201 New York Ave., NW, Suite 650
Washington, DC 20005

*Counsel for Plaintiffs Neimenggu Fufeng
Biotechnologies Co., Shandong Fufeng
Fermentation Co., Ltd., and Xinjiang Fufeng
Biotechnologies Co., Ltd.*

Dated: May 3, 2024

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Plaintiff's Reply contains 5,290 words, including footnotes, as computed by Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt's Microsoft Word processing system, and is less than the 7,000 word limit.


<u>*/s/ Dharmendra N. Choudhary*</u>
Dharmendra N. Choudhary

*Counsel for Plaintiffs*


Dated: May 3, 2024