United States Court of International Trade
One Federal Plaza
New York, New York 10278



CHAMBERS OF
Gary S. Katzmann
JUDGE

August 7, 2024

Ned H. Marshak
Grunfeld, Desiderio, Lebowitz, Silverman &
Klestadt LLP
1201 New York Ave. NW, Suite 650
Washington, D.C. 20005

Daniel Bertoni
U.S. Department of Justice
Civil Division, Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044

David J. Craven
Craven Trade Law LLC
3744 N. Ashland Avenue
Chicago, IL 60613

Re:   Questions for Oral Argument in <u>Neimenggu Fufeng Biotechnologies Co. v. United States</u>, Consol. Court No.: 23-00068

Dear Counselors:

Oral argument in this case will be held in the James L. Watson Courthouse on Wednesday, September 11, 2024, in Courtroom 1 at 11:00 a.m. The argument, if public and not closed, will be recorded and may be made available to the public via the court's website. If you will be requesting a closed argument or portions of the argument, please inform my case manager, Geoffrey Goell, by 5:00 p.m. on September 4, 2024. The court encourages the parties to maintain a public argument if possible.

The court has reviewed the parties' briefs and documents and would like counsel to submit answers in writing to the court's questions by 5:00 p.m. on Wednesday, September 4, 2024. The questions should not be construed as suggesting that the court has made any conclusive determinations prior to argument. Parties shall file public and, if necessary, confidential versions of their answers, of not more than 2,500 words.

The oral argument will be dedicated only to rebuttal arguments to the answers filed by opposing counsel. The court will also permit but not require brief opening statements. The length of parties' presentations shall not exceed twenty-five (25) minutes for Plaintiff and twenty-five (25) minutes for Defendant.

At this time, the court requires neither a presentation at oral argument nor written answers to these questions from Consolidated Plaintiffs Meihua Group International (Hong Kong) Limited and Xinjiang Meihua Amino Acid Co., Ltd.  If Consolidated Plaintiffs intend to divide time with Plaintiff at oral argument (with the combined length of the presentations not to exceed the twenty-five (25) minutes allotted to Plaintiff), they may notify the court of that intention by 5:00 p.m. on Wednesday, September 4, 2024.

I. **Questions to Plaintiffs Neimenggu Fufeng Biotechnologies Co., Shangdong Fufeng Fermentation Co., Ltd., and Xinjiang Fufeng Biotechnologies Co., Ltd. (collectively, "Fufeng")**

1. Fufeng's reply brief states that "Fufeng was not put on notice that HTS 2701.12.9000 could be triggered to directly value coal in the Final Results until Petitioner specifically raised this point in its case brief," Pl.'s Reply Br. in Supp. of Mot. for J. on Agency R. at 3, May 3, 2024, ECF No. 34.  But in the Preliminary Determination, Commerce selected HTS 2701.12.9000 for coal.  Preliminary Surrogate Value Spreadsheet, tab SV at cell D32 (Aug. 1, 2022) (P.R. 198).  How did this not constitute notice that HTS 2701.12.9000 could be invoked to directly value coal?

   a. Assuming that the Preliminary Determination did not provide adequate notice, could Commerce have provided adequate notice without explicitly stating that Commerce was considering directly valuing the input using the HTS heading in question?

2. Please respond to the Government's argument that failing to deduct Section 301 duties from U.S. price "would result in the effective non-collection of Section 301 duties in the form of a lowered dumping margin, an outcome that would defeat the purpose of the Section 301 duties."  Def.'s Resp. in Opp'n to Pls.' Mot. for J. on the Agency R. at 32, Feb. 27, 2024, ECF No. 31 ("Gov't Br.").

3. Please respond to the Government's argument that the three-factor test set forth in Wheatland Tube Co. v. United States, 495 F.3d 1355 (Fed. Cir. 2007) is not necessary where the text of the "authorized governmental action that prescribed the duty . . . makes clear that the duty newly being imposed was to add to, and not partly or wholly offset, the antidumping duties that would be due without the new duty," following the Federal Circuit's ruling in Borusan Mannesmann Boru Sanyi ve Ticaret A.S. v. United States, 63 F.4th 25, 34 (Fed. Cir. 2023).  Gov't Br. at 32.

   a. Fufeng's brief states that Section 301 duties "serve a trade-related, remedial purpose."  Pl.'s Mot. for J. on the Agency R. at 31, ECF No. 25 ("Fufeng's Br.").  Is the purpose of duties arising from an investigation of "China's laws, policies, practices, or actions that may be unreasonable or discriminatory and that may be harming American intellectual property rights, innovation, or technology development" necessarily limited to trade?  Addressing China's Laws, Policies, Practices, and Actions Related to

    Intellectual Property, Innovation, and Technology, 82 Fed. Reg. 39007, 39007 (USTR Aug. 17, 2017).

   b. Suppose, hypothetically, that the USTR imposes a duty pursuant to Section 301 on certain foreign technology companies in response to those companies' theft of intellectual property from their U.S.-based competitors. Would those duties also serve a trade-related, remedial purpose?

4. In response to the Government's motion to dismiss for lack of standing, Fufeng states that "[c]ontinued application of the Cohen's $d$ test upon remand could require additional rounds of briefing. . . and would waste the resources of the Court." Fufeng's Reply Br. at 16. Does this alleged harm differ from that alleged in Best Mattresses Int'l Co. Ltd. v. United States, 622 F. Supp. 3d 1347, 1368 (CIT 2023)?

5. Please explain how Commerce's determination in Chlorinated Isocyunarates from the People's Republic of China, 78 Fed. Reg. 4386 (Dep't Com. Jan. 22, 2013) ("Chlorinated Isos") can be reconciled with the notion that Commerce has a "longstanding, established practice to not separately value energy FOPs where such energy expenses are potentially included in surrogate financial ratios but cannot be segregated." Fufeng's Br. at 12.

6. Fufeng states that Commerce's choice to directly value energy factors of production led to a less accurate normal value calculation. Fufeng's Br. at 2. The Government maintains that direct valuation of energy factors led to a more accurate normal value calculation. Gov't Br. at 17. As the substantial evidence standard may be satisfied "even if it is possible to draw two inconsistent conclusions from evidence in the record," Am. Silicon Techs. v. United States, 261 F.3d 1371, 1376 (Fed. Cir. 2001), might reasonable minds disagree about the best means of calculating normal value based on the record as a whole? Why or why not?

7. How does the Supreme Court's decision in Loper Bright Enterprises v. Raimondo, No. 22-1219, 2024 WL 3208360 (U.S. June 28, 2024) impact this case?

8. What authorities best support your overall argument?

9. Are there any recent or pending Federal Circuit or CIT cases that may affect the court's analysis?

II. **Questions for Defendant the United States ("the Government")**

1. The Government's brief cites Nation Ford Chem. Co. v. United States, 166 F.3d 1373, 1377 (Fed. Cir. 1999) for the proposition that Commerce has "wide discretion in the valuation of factors of production." That case rested heavily upon the Supreme Court's decision in Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984). How should the court evaluate Commerce's decisions regarding its factors of production methodology in light of Loper Bright Enterprises

v. Raimondo, No. 22-1219, 2024 WL 3208360 (U.S. June 28, 2024)?

2. Fufeng urges the court to adhere to the reasoning in Zhaoqing Tifo New Fibre Co., Ltd. v. United States, 39 CIT 372, 396, 60 F. Supp. 3d 1328, 1350 (2015) (internal quotation marks and citations omitted), in which the court declined to require administrative exhaustion because unanticipated changes between the preliminary and final determinations meant that judicial review constituted the plaintiff's "first meaningful opportunity to challenge Commerce's decision." Pl.'s Reply Br. in Supp. of Mot. for J. on the Agency R. at 7, May 3, 2024, ECF No. 34. Please respond to this argument.

3. The court has held that Commerce abuses its discretion when it denies corrections involving "a 'straightforward mathematical adjustment' that 'would neither have required beginning anew nor have delayed making the final determination.'" Fischer S.A. Comercio, Industria & Agricultura v. United States, 34 CIT 334, 347, 700 F. Supp. 2d 1364 (2010) (quoting Timken U.S. Corp. v. United States, 434 F.3d 1345, 1353 (Fed. Cir. 2006)).

   a. Would accepting the May 27, 2022 submission of the coal test certificates have entailed more than a "straightforward mathematical adjustment"?

   b. Would accepting the May 27, 2022 submission of the coal test certificates have required beginning anew or have delayed the final determination?

4. Can you point to any examples other than Chlorinated Isos in which Commerce directly valued energy despite not being able to completely isolate energy costs in surrogate financial statements?

5. The Federal Circuit in Borusan looked to the text of the Presidential Proclamation in order to determine whether the duties at issue should be imposed in addition to antidumping duties. Borusan, 63 F.4th at 35. Why should the court take the same approach to the text of determinations by the United States Trade Representative ("USTR") that implement Section 301 duties?

6. Beyond the issue referenced in Question 1, does the Supreme Court's decision in Loper Bright Enterprises v. Raimondo, No. 22-1219, 2024 WL 3208360 (U.S. June 28, 2024) impact this case?

7. What authorities best support your overall argument?

8. Are there any recent or pending Federal Circuit or CIT cases that may affect the court's analysis?

                Sincerely,

                */s/ Gary S. Katzmann*
                Gary S. Katzmann
                Judge