## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

————————————————————————x
:
NEIMENGGU FUFENG BIOTECHNOLOGIES :
CO., SHANDONG FUFUENG FERMENTATION :
CO., LTD., and XINJIANG FUFENG :
BIOTECHNOLOGIES CO., LTD., :
:
        Plaintiffs, :
:     Consol. Court No. 23-00068
        and :
:     **PUBLIC VERSION**
MEIHUA GROUP INTERNATIONAL (HONG :
KONG) LIMITED and XINJIANG MEIHUA :
AMINO ACID CO., LTD., :
:
        Consolidated Plaintiffs, :
:
        v. :
:
UNITED STATES, :
:
        Defendant, :
:
————————————————————————x

## PLAINTIFFS' COMMENTS IN OPPOSITION TO REMAND REDETERMINATION

Ned H. Marshak
Dharmendra N. Choudhary*
Jordan C. Kahn*

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

599 Lexington Ave., 36th Floor
New York, New York 10022
(212) 557-4000
**
*1201 New York Ave., NW, Suite 650
Washington, DC 20005
(202) 783-6881

*Counsel for Plaintiffs Neimenggu Fufeng
Biotechnologies Co., Shandong Fufeng
Fermentation Co., Ltd., and Xinjiang Fufeng
Biotechnologies Co., Ltd.*

Dated: June 20, 2025

## <u>TABLE OF CONTENTS</u>

I. STANDARD OF REVIEW.........................................................................................................1

II. COMMERCE'S REDETERMINATION TO DIRECTLY VALUE FUFENG'S ENERGY
COSTS IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE ............................................2

III. COMMERCE UNLAWFULLY VALUED FUFENG'S COAL UNDER HTS 2701.12.9000
INSTEAD OF HTS 2701.19 ...................................................................................................6

    A. HEAT VALUE IS THE MOST SINGIIFCANT PRODUCT-SPECIFICITY
ATTRIBUTE OF FUFENG'S ENERGY COAL ...................................................................7

    B. COMMERCE IMPROPERLY FAILED TO PLACE FUFENG'S COAL TEST
CERTIFICATES ON THE RECORD......................................................................................9

    C. IN CONTRAST TO HTS 2801.19, THE SELECTED HTS 2701.12.9000 FAILS TO
PROVIDE A RELIABLE AND REPRESENTATIVE SV ....................................................11

    D. THE REMAND'S RATIONALE TO SUPPORT HTS 2701.12.9000 IS WITHOUT
MERIT...................................................................................................................................16

IV. CONCLUSION.....................................................................................................................23

## <u>Table of Authorities</u>

**Cases**

*Allied Pacific Food (Dalian) Co. v. United States*,
   435 F. Supp. 2d 1295 (CIT 2006) ............................................................................... 19

*Carbon Activated Tianjin Co. v. United States*,
   547 F. Supp. 3d 1310 (CIT 2021) ............................................................................... 20

*Carbon Activated Tianjin Co. v. United States*,
   2023 WL 4678995 *1 (CIT July 21, 2023) .................................................................. 17

*Consol. Edison Co. v. NLRB*,
   305 U.S. 197 (1938) ...................................................................................................... 1

*CP Kelco US, Inc. v. United Statese*,
   2016 WL 1403657 *1 (CIT Apr. 8, 2016) ................................................................... 18

*Deckers Corp. v. United States*,
   532 F.3d 1312 (Fed. Cir. 2008) ................................................................................... 15

*Gerald Metals, Inc. v. United States*,
   132 F.3d 716 (Fed. Cir. 1997) ...................................................................................... 2

*Gerson Co. v. United States*,
   898 F.3d 1232 (Fed. Cir. 2018) ................................................................................... 16

*Guangdong Chems. Imp. & Exp. Corp. v. United States*,
   30 CIT 1412 (2006) ..................................................................................................... 19

*Hebei Metals & Minerals Imp. & Exp. Corp. v. United States*,
   29 CIT 288 (2005) ....................................................................................................... 14

*Longkou Haimeng Mach. Co. v. United States*,
   33 CIT 603 (2009) ....................................................................................................... 15

*Loper Bright Enterprises v. Raimondo*,
   603 U.S. 369 (2024) ...................................................................................................... 2

*Matsushita Elec. Indus. Co. v. United States*,
   750 F.2d 927 (Fed. Cir. 1984) ...................................................................................... 1

*Nakornthai Strip Mill Pub. Co. v. United States*,
   32 CIT 1272 (2008) ....................................................................................................... 1

*Neimenggu Fufeng Biotechnologies v. United States*,
   741 F. Supp. 3d 1354 (CIT 2024) ................................................................................. 1

*Peer Bearing Co.-Changshan v. United States*,
   914 F. Supp. 2d 1343 (CIT 2013) ............................................................................... 16

*Shanghai Foreign Trade Enters. Co. v. United States*,
   28 CIT 480 (2004) ....................................................................................................... 19

*Taian Ziyang Food Co. v. United States*,
   783 F. Supp. 2d 1292 (CIT 2011) ............................................................................... 14

*Vulcan Threaded Prods. Inc. v. United States*,
   311 F. Supp. 3d 1357 (CIT 2018) ............................................................................... 16

*Xiamen Int'l Trade & Indus. Co. v. United Staes*,
   953 F. Supp. 2d 1307 (CIT 2013) ................................................................................. 1

*Zhejiang Dunan Hetian Metal Co. v. United States,*
  652 F.3d 1333 (Fed. Cir. 2011)...................................................................... 15
*Zhenzhou Harmoni Spice Co. v. United States,*
  617 F. Supp. 2d 1281 (CIT 2009) .................................................................. 15

**Statutes**
19 U.S.C. § 1516a ................................................................................................ 1

 **Federal Register Notices & Publications**
*Certain Acivated Carbon from the People's Republic of China: Final Results of Antidumping*
  *Duty Administrative Review; and Final Determiation of No Shipments; 2019-2020,*
  86 Fed. Reg. 73,731 (Dec. 28, 2021) .............................................................. 21
*Certain Acivated Carbon from the People's Republic of China: Final Results of Antidumping*
  *Duty Administrative Review; and Final Determiation of No Shipments; 2020-2021,*
  87 Fed. Reg. 67,671 (Nov. 9, 2022) ................................................................ 22
*Certain Acivated Carbon from the People's Republic of China: Final Results of Antidumping*
  *Duty Administrative Review; and Final Determiation of No Shipments; 2021-2022,*
  88 Fed. Reg. 77,553 (Nov. 13, 2023) .............................................................. 22
*Diamond Sawblades and Parts Thereof from the People's Republic of China:Final Results of*
  *Antidumping Duty Administrative Review; 2011-202,*
  79 Fed. Reg. 35,723 (June 24, 2014) .............................................................. 15
*Notice of Final Results and Partial Rescission of Antidumping Duty Administrative Review:*
  *Cerain Oil Country Tubular Goods from Mexico,*
  70 Fed. Reg. 60,492 (Oct. 18, 2005)............................................................... 10

Plaintiffs Neimenggu Fufeng Biotechnologies Co., Shandong Fufeng Fermentation Co., Ltd., and Xinjiang Fufeng Biotechnologies (collectively, "Fufeng") submit these comments in opposition to the Final Results of Redetermination Pursuant to Court Remand ("Remand"), ECF 54, C.R.R. 3, P.R.R. 5, filed by the U.S. Department of Commerce ("Commerce" or "Department") in response to this Court's ruling in *Neimenggu Fufeng Biotechnologies v. United States*, 741 F. Supp. 3d 1354 (CIT 2024) ("*Fufeng AR8*"). Commerce's Remand was issued for the eighth administrative review ("AR8") of the antidumping duty ("ADD") Order on Xanthan Gum from the People's Republic of China ("China"), with a period of review ("POR") from July 1, 2020, through June 30, 2021. This Court ordered remand because Commerce in *Xanthan Gum from China*, 88 Fed. Reg. 9861 (Feb. 2, 2023), P.R. 241 ("*Final Results*"), did not adequately explain why it directly valued Fufeng's energy costs in calculating Fufeng's ADD rate. *Id.* at 1370. This Court also ordered Commerce to consider for the first time whether Harmonized Tariff Schedule ("HTS" or "HS") 2701.12.9000 or HTS 2701.19 is the most appropriate subheading to value Fufeng's energy coal. *Id.* at 1376.

## I.    <u>STANDARD OF REVIEW</u>

"The court reviews remand determinations for compliance with the court's remand order." *Nakornthai Strip Mill Pub. Co. v. United States*, 32 CIT 1272, 1274 (2008). As with all Commerce ADD determinations, this Court must hold unlawful remand redeterminations that are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "Substantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938); *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984). Substantial evidence requires more than mere assertion of "evidence which in and of itself justified {the determination}, without taking into account contradictory evidence

or evidence from which conflicting inferences could be drawn." *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (quotation omitted). In accordance with *Loper Bright Enterprises v. Raimondo*, courts are now required to "exercise their independent judgment in deciding whether an agency has acted within its statutory authority." 603 U.S. 369, 413 (2024).

## II.    COMMERCE'S REDETERMINATION TO DIRECTLY VALUE FUFENG'S ENERGY COSTS IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE

This Court remanded "Commerce's direct valuation of Fufeng's energy factors of production {because it} is unsupported by substantial evidence as currently explained." *Fufeng AR8*, 741 F. Supp. 3d at 1367. Agreeing with Fufeng's arguments, this Court noted that "it does seem odd that such a generic-seeming line item as 'administrative and other expenses' would primarily refer to an expense category as specific as energy." *Id*. at 1368. In this regard, Commerce was asked by this Court to address the following concerns:

> Commerce did not explain why the narrower "administrative and other expenses" line item—which it now considers to house energy expenses—does not continue to blend those expenses with the "G&A" expenses that remained within the line item even after Ajinomoto's spin-off of "selling and distribution" expenses. Nor did Commerce point to any evidence that energy expenses predominate over G&A within "administrative and other expenses," or over any other type of expense that might fall under that imprecisely-worded line item.

*Id.* at 1369.

Bypassing these judicially-recognized concerns, Commerce's Remand continues to separately value Fufeng's energy factors of production ("FOP"), reasoning that it is able "to isolate a line item that allows us to directly value energy, account for the majority of SG&A expenses, and avoid double-counting in a situation where the production process for subject merchandise is energy-intensive." Remand at 18. It further claims "that the changes in Ajinomoto (Malaysia)'s financial statements between reviews constitute substantial evidence which warrants the direct valuation of Fufeng's energy costs in this review." *Id*. at 4.

Commerce's Remand essentially parrots the *Final Results* statement that a two-way "split {of} the 'other operating expenses' line item into two sub-line items", Remand at 17 – "Selling and Distribution expenses" and "Administrative and Other expenses" - enables the Department to migrate the latter sub-line item from Sales, General & Administrative ("SG&A") to material, labor and energy ("MLE") category, and thereby "isolate and value the majority of SG&A expenses while simultaneously using Fufeng's own FOPs to value energy." *Id*. at 7. However, the Remand fails to address this Court's substantive concerns as to why this rationale is sufficient to find the Department's redetermination supported by substantial evidence and in accordance with law.

The only reasoning in the Remand which responds to the Court's Order are quantitative estimates of Fufeng's total energy cost and estimated percentage of energy cost embedded in the Ajinomoto 20-21 financial statement's line item, "Administrative and Other Expenses." *See* Remand at 6-8. These quantifications, besides being arbitrary, fail to support the Remand's recycled decision. As such, the Remand fails to demonstrate that the new methodology results in an accurate margin calculation.

First, the Remand asserts that "the relative importance of energy in the production of xanthan gum, as reflected on the record of the underlying proceeding, is a key consideration behind Commerce's direct valuation of energy FOPs." *Id*. at 9.  In support, the Remand cites Commerce's Final Analysis Memorandum where: "The resulting total energy expense calculated by Commerce's program was [          ] USD while the total direct materials expense was [          ] USD." *Id*. at 9 (citing U.S. Department of Commerce Memorandum (Feb. 1, 2024), C.R. 134, P.R. 234, at 3). However, this energy calculation does not reflect Fufeng's actual experience. It is improperly inflated by relying on a surrogate value ("SV") for energy of

0.84 RM/kg under HTS 2701.12.9000, which, as demonstrated *infra*, does not represent Fufeng's energy coal input and is unsupported by substantial evidence and established agency and judicial precedent. In fact, Fufeng's energy FOPs are correctly valued at [          ] USD by using an SV of 0.34 RM/kg reported in HTS 2701.19. Thus, the Remand overvalued Fufeng's energy costs to create a predicate for the direct valuation of Fufeng's energy inputs, while overlooking myriad distortions resulting from such methodology. For this reason, the Remand's threshold rationale that Fufeng's outsized energy cost (in relation to its total direct material cost) necessitates a separate valuation of its energy FOPs remains unsupported on this record.

Second, the Remand improperly advances the rationale that "more than half (*i.e.*, 55.91 percent) of the original SG&A expenses remained accounted for in Commerce's revised SG&A ratio calculation after the removal of 'administrative and other expenses' from the numerator." Remand at 7. Such rationale fails to address the critical question why Commerce should resort to a new methodology which  results in distorted overhead and SG&A ratios calculation.

Third, responding to the Court's specific concerns, the Remand concedes (as it must) "that 'administrative and other expenses' may continue to blend energy expenses with G&A", yet claims that "unlike in prior reviews, the level of imprecision involved in segregating energy here does not warrant valuing energy indirectly." *Id*. at 8. However, the Remand neglects to provide the requisite demonstration of the asserted reduced imprecision afforded by Commerce's new methodology in the 2020-2021 financial statement of Ajinomoto (Malaysia) Berhad ("Ajinomoto"), as compared to the old methodology used for the prior Ajinomoto statements in the preceding fifth, sixth, and seventh administrative reviews of the ADD Order on Xanthan Gum from China ("AR5/6/7").

The mere fact that energy cost is embedded in a subset (*i.e.*, "Administrative and Other Expenses") of "Other Operating Expenses" in Ajinomoto's 2020-2021 statement fails to overcome the threshold fact that the energy cost is still embedded as an indivisible and indeterminate component in a basket category line item. Consequently, "this methodology results in distorted overhead and SGA ratios, which consequently yields a less accurate margin than the margins calculated by Commerce in AR5/6/7." Memorandum of Law in Support of Plaintiffs' Motion for Judgment on the Agency record Pursuant to USCIT Rule 56.2 (Oct. 30, 2023), ECF 25 ("Fufeng Opening Brief"), at 18.

Further, the Remand fails to answer the Court's critical concern as to how energy expense could predominate over G&A within the imprecisely-worded sub-line item, "administrative and other expenses." While notably conceding "that it is impossible to ascertain the extent to which energy expenses 'predominate over G&A' within that line item", the Remand retorts that "neither the Court nor Fufeng dispute Commerce's finding that energy is contained in the 'administrative and other expenses' line item". Remand at 18. However, the Remand then overlooks the probability that "allocating the total amount of expense reported in 'administrative and other expenses' solely to the 'Energy' category significantly distorts the resulting overhead and SGA ratios". Fufeng Opening Brief at 18.

Finally, the Remand "fails to weigh the *presumably enhanced margin accuracy* (based on the direct valuation of energy FOPs) against the *actually reduced margin accuracy* (resulting from distorted overhead and SGA ratios)". *Id.* at 19 (emphasis in original). Its rationale that "the indirect valuation of energy . . . is an imperfect approach, . . . because it requires Commerce to zero out the energy usage reported by Fufeng, {which} is not ideal", Remand at 17, is a one-sided disjunctive analysis bypassing a demonstration as to how the Remand's methodology is

comparatively "perfect" and "ideal" – given the obvious distortion of SG&A ratios (caused by excluding portions of G&A in the numerator and correspondingly overloading the denominator) and overhead ratios (caused by overloading of the denominator by additional G&A).

In sum, absent a conjunctive, comparative analysis of all aspects involved in the direct and indirect valuation of Fufeng's energy inputs, the Remand's adherence to the direct valuation methodology, which merely asserts the imprecision of SGA ratios has been reduced – without demonstrating that this admittedly flawed methodology leads to more accurate results than an indirect methodology – is  unsupported by substantial evidence and contrary to law.

## III.    COMMERCE UNLAWFULLY VALUED FUFENG'S COAL UNDER HTS 2701.12.9000 INSTEAD OF HTS 2701.19

Since Commerce in its *Final Results* rejected Fufeng's arguments in support of HTS 2701.19 for its alleged lack of timely exhaustion, "Commerce did not offer an affirmative explanation for why it selected HTS 2701.12.9000." *Fufeng AR8,* 741 F. Supp. 3d at 1376. The Court therefore ordered Commerce to explain "whether HTS 2701.12.9000 or HTS 2701.19 is the proper subheading for the valuation of Fufeng's coal factor of production." *Id*.

The Remand adheres to HTS 2701.12.9000, overriding the alternative HTS 2701.19, for valuing Fufeng's energy coal. Remand at 9-14. To support its choice, Commerce reasons "that HS subheading 2701.12.9000 is more specific to Fufeng's coal FOP. . .{since it} explicitly covers bituminous and non-coking coal as used by Fufeng." *Id*. at 12. Conversely, it reasons that "HS subheading 2701.19 is a broader category, which explicitly does not cover bituminous coal and may include coking grade coal." *Id*. at 13. As discussed below, this Remand finding is not supported by substantial evidence and is contrary to controlling judicial precedent and Commerce's well-established practice.

A.    **Heat Value is the Most Significant Product-Specificity Attribute of Fufeng's Energy Coal**

Summarized below is the record evidence regarding Fufeng's energy coal:

- E-COAL was reported as a FOP among Fufeng's energy inputs. Fufeng Sections C-D Questionnaire Response (Dec. 15, 2021), C.R. 63-72, P.R. 78-86 Exhibit D-2.

- Uncontested record evidence establishes that "the coal utilized by Fufeng as a source of energy had a calorific value limit (on a moist, mineral-matter-free basis) less than 5800 Kcal/Kg." Fufeng Section D Supplemental Questionnaire Response (Feb. 16, 2022), C.R. 78-83, P.R. 126-27 ("SDQR"), at 6.

- Record evidence confirms that Fufeng's E-COAL input is essentially an "energy coal", *i.e.*, a coal utilized solely for generating energy or electricity. Fufeng Third Supplemental Questionnaire Response (May 2, 2022) C.R. 103-20, P.R. 155-71, Exhibit 3S-5.

- Fufeng's coal used for generation of energy is a non-coking grade bituminous coal. Fufeng's Fourth Supplemental Questionnaire Response (July 11, 2022), C.R. 123, P.R. 185, at 1.

Tellingly, all of Fufeng's coal test certificates – that encompass 100% of its coal purchases during the POR – specify that the heat values are less than 5,833 Kcal/Kg. Fufeng Opening Brief at 26-30. These test certificates, which were unlawfully rejected, and which as a result of the Court's decision are now required to be reinstated on the record, provide unimpeached evidence that 100% of Fufeng's energy coal has a heat value less than the prescribed threshold limit for classification under HTS 2701.12 (*infra*). *Id*. At oral argument, Fufeng's counsel succinctly fleshed out this controlling evidentiary fact for the Court as follows:

Qn. 3 about coal test certs, which is about Commerce's abuse of discretion in rejecting coal test certs. Now, the chart on the coal test certs Fufeng submitted entailed a straightforward mathematical analysis. For each coal test cert in that Excel spreadsheet, the chart provided detailed specs of that coal including its gross calorific value. Now, under subheading 2 to Ch 27, bituminous coal of heat value equal to or exceeding 5833 kcal/kg is classified under 2701.12, otherwise it is classified under 2701.19. Now, in Fufeng's coal test chart, that big spreadsheet where there were thousands of line items, all Commerce had to do was one thing.

> And what it was? Commerce had to click on the filter that was attached to the
> column on gross calorific value. It just had to click, make a click. Then what
> would happen upon clicking ? You will see the lower bookend and the higher
> bookend of the heat values that are listed in that column. And Commerce would
> then have instantly recognized that not even one of those thousands of coal test
> certs supported classification under HTS 2701.12.9000. It was indeed a
> compelling corroborative evidence that Commerce repeatably tried to escape
> from. Government at page 6 claims – "we cannot say had Commerce considered
> this evidence, it would have used a different surrogate value".  If fact, we can say
> that had Commerce considered this evidence, it would have used SV based on
> 2701.19. It would have seen the plethora of evidence that would have required a
> choice not different than HTS 2701.19.

Oral Argument Transcript (Sept. 11, 2024) ECF 46, at 16.07-18.10.

The facts on this record establish that Fufeng's energy coal is characterized by the

following product-specificity attributes:

1. Heat value – less than 5,800 Kcal/Kg (moist, mineral-matter free basis)

2. Commercial Grade – Bituminous, non-coking

Because Fufeng's energy coal is utilized for the generation of electricity, the underlying

heat value is its most significant relevant product-specificity attribute because it is directly linked

to the end-use of the coal (*i.e.*, generation of the required amount of heat and electricity) during

the production of the subject merchandise. In other words, the intrinsic heat value of energy coal

is Fufeng's paramount consideration when purchasing energy coal input for the generation of

electricity. Therefore, the cost of energy coal input should be most directly correlated to its heat

value, the primary product-specificity attribute. Conversely, energy coal's commercial grade –

bituminous, non-coking – is its secondary attribute in the context of the production of the subject

merchandise. The Remand unpersuasively reasons that "Fufeng fails to support its claim that the

non-coking designation should be secondary to its 'underlying heat value.'" Remand at 20.

However, the Remand fails to explain how in the context of purchasing coal solely for energy

generation, its coking designation could be more important than its heat value. Accordingly, this rationale is without merit.

In sum, the most appropriate surrogate value choice for Fufeng's energy coal can only be provided by an HTS subheading that is most directly associated with its underlying heat value.

## B. Commerce Improperly Failed to Place Fufeng's Coal Test Certificates on the Record

Pursuant to the restoration of Fufeng's rebuttal brief arguments supporting the choice of HTS 2701.19 for valuing energy coal, Commerce, as a logical corollary, was required to place on the administrative record the underlying coal test certificates timely submitted by Fufeng in its 30-day factual information comments and its fourth supplemental questionnaire response. Yet Commerce unlawfully refused to do so. Importantly, because these test certificates cover all of Fufeng's coal purchases during the POR, they are relevant to Commerce's decision as to how to value Fufeng's energy coal. Moreover, given that the less than 5,800 Kcal/Kg heat value reporting of Fufeng's energy coal remains unrebutted on the record, Commerce's continued refusal to place these test certificates on the record does not change the fact that Commerce's SV choice is contrary to law.

During the administrative phase, Commerce rejected the test certificates as unsolicited factual information that should have been included in response to an earlier supplemental questionnaire. U.S. Department of Commerce Memorandum (July 27, 2022), P.R. 191. Yet that earlier questionnaire did not require that Fufeng report the energy content of its coal, either expressly or implicitly. SQDR at 6.[1] As Commerce never previously required Fufeng to submit

---

[1] Fufeng reported both electricity and the fuel used to produce the electricity (*i.e.*, coal) as energy inputs. Commerce's questionnaire specifically asks to report the fuel used to generate electricity. a. Please confirm that you have reported these energy inputs correctly.
**ANSWER: Fufeng confirms that the company reported the energy inputs correctly, using the same method it used in the previous review. We note that the coal utilized by Fufeng as a source of energy had a calorific value limit (on a moist, mineral-matter-free basis) less than 5800 Kcal/Kg.**

the test reports, they were timely submitted to support Fufeng's claimed SV. Further, Commerce improperly compelled Fufeng to redact portions of its Rebuttal Brief referencing coal test reports after finding that "petitioner did not challenge Commerce's {SV} selection (*i.e.*, {SV} HTS selection for coal)." U.S. Department of Commerce Letter to Fufeng (Dec. 12, 2022), P.R. 229. This rationale is wrong because coal was not preliminarily valued, U.S. Department of Commerce Memorandum (July 29, 2022), P.R. 197, at 3, and Fufeng's alternative merely modified the methodology proposed by Petitioner C.P. Kelco U.S., Inc. ("Petitioner"). Commerce's practice considers such arguments as proper rebuttal: Fufeng's proposed valuation of coal "is an alternative to {Petitioner's} proposed methodology for calculating {the value of coal} and as such is appropriately included in its rebuttal brief." *Oil Country Tubular Goods from Mexico: Notice of Final Results and Partial Rescission of Administrative Review*, 70 Fed. Reg. 60,492 (Oct. 18, 2005), Issues & Decision Memorandum ("IDM") n.1.

Moreover, there is a direct nexus of coal's heat value with the choice of the most appropriate HTS subheading for surrogate value purposes. Reinstating these test certificates puts to rest Commerce's alibi that "while Fufeng claims that its coal has a calorific heat value that is below 5,800 kcal/kg, there is no record information to further support this claim", Remand at 14, or that "information substantiating Fufeng's claims regarding the underlying heat value of its coal inputs is missing from the record." *Id.* at 21. In fact, the unlawful rejection by Commerce of these timely submitted coal test certificates is the sole reason why Commerce concluded that these properly and timely submitted documents are "missing from the record." *Id.*

Yet the Remand fails to reinstate these test certificates, numbering several hundreds, to the record, presumably to allow Commerce to avoid considering key evidence establishing that Fufeng's energy coal, in every instance, has a calorific value (on a moist, mineral matter free

basis) of less than 5,800 kcal/kg.

The Remand claims that "Commerce has complied with that order in full . . .{and that} contrary to Fufeng's claim, Commerce is not required to reopen the record to Fufeng to reinstate its coal test certificates, which Commerce properly rejected from the record." Remand at 21. Commerce's reasoning is directly contrary to this Court's opinion discussing this issue as follows: "{B}ecause (as explained below) the court excuses Fufeng's non-exhaustion of its argument on the HTS subheading assignment case, the court has no occasion to address Fufeng's separate argument that Commerce unlawfully declined to consider certain submissions." *Fufeng AR*, 741 F. Supp. 3d 1370 n.9. This statement implies that the Court expected the agency to consider all of the evidence relevant to the choice of the most suitable and accurate HTS subheading. The Remand's failure to consider these test certificates is a futile attempt to weaken the choice of HTS 2701.19 under which Fufeng's coal is properly covered, as discussed below.

Even in the absence of these coal test certificates, Commerce's rejection of HTS 2701.19 is unlawful because the energy coal's reported heat value of < 5,800 kcal/kg was never challenged by the Petitioner or Commerce in the underlying proceeding. Yet, because these test certificates are comprehensive and provide granular details about the heat value, their inclusion on the record would have enhanced the analytical underpinnings of the selected HTS subheading and precluded Commerce from selecting an incorrect SV source, HTS 2701.12.9000 to value coal based on its disingenuous claim that Fufeng did not submit substantial evidence to support classification in HTS 2701.19.

C.     **In Contrast to HTS 2701.19, the Selected HTS 2701.12.9000 Fails to Provide a Reliable and Representative SV**

The scope of the two competing HTS subheadings are as follows:

1. HTS 2701.12.9000 – Coal, Whether Or Not Pulverised, But Not
   Agglomerated: Bituminous Coal: O/T Coking Coal. Final SV Memo,
   Attachment 1, Tab: "SV"; and

2. HTS 2701.19 – Coal, Other Than Anthracite Or Bituminous, Whether Or
   Not Pulverized, But Not Agglomerated.

Fufeng First SV submission (Mar. 31, 2022), P.R. 147-52, Exhibit 1.

Subheading Note 2 to Chapter 27 expressly defines the respective scope of these

subheadings as follows:

> 2.- For the purposes of subheading 2701.12, "bituminous coal" means coal having
> a volatile matter limit (on a dry, mineral-matter-free basis) exceeding 14 % and a
> calorific limit (on a moist, mineral-matter-free basis) equal to or great than 5,833
> kcal/kg.

Fufeng Opening Brief at 22. As such, Note 2 truncates the scope of 6-digit HTS 2701.12 (and,

consequently, the 10-digit HTS 2701.12.9000), narrowing it to the subset of coal having heat

value equal to or greater than 5,833 kcal/kg.

Further, there is a distinction between commercially designated bituminous coal and

bituminous coal as defined in Note 2 to Chapter 27 and classified under HTS 2701.12 (and,

consequently, the 10-digit HTS 2701.12.9000 covering non-coking coal).

Accordingly, in order to be classified under HTS 2701.12.9000, the coal must satisfy all

of the following criteria:

> ➢ calorific limit (on a moist, miner-matter-free basis) >= 5,833 kcal/kg.

> ➢ volatile matter limit (on a dry, mineral-matter-free basis) > 14 %.

> ➢ non-coking grade

If a coal sample fails either of the first two criteria, it is not considered a bituminous coal

for tariff classification purposes and is therefore not classified under HTS 2701.12 or

2701.12.9000. Consequently, such a coal is classified automatically under the residual

subheading HTS 2701.19. As such, coal having a heat value less than 5,833 kcal/kg – regardless

of its volatility matter content and coking grade – will be classified under HTS 2701.19.

In view of these criteria, the Remand advances meritless reasoning that "Fufeng does not,

however, address the relative importance of the coking designation and does not address the

volatile matter limit of the bituminous designation as found in subheading note 2 to Chapter 27".

Remand at 19. These ancillary "unaddressed" inquiries are irrelevant since they cannot result in

the lower energy coal being classified in HTS 2701.12.9000. Therefore, the Remand's

presumption that "because the record is devoid of evidence regarding the relative importance of

Fufeng's non-coking grade designation, Commerce attributes this grade designation as an

equivalent consideration to heat values for purposes of selecting an HS category", *id*. at 21, is

without merit and unsupported by substantial evidence. For the same reason, the Remand

advances the following assertion that is likewise devoid of merit:

> because Fufeng did not describe the relative importance of volatile matter
> thresholds, indicated that its coal is 'commercially traded as bituminous coal,' and
> subheading note 2 to Chapter 27 included volatile matter thresholds as a
> consideration for a 'bituminous coal' designation, Commerce continues to find
> Fufeng's coal to be bituminous for purposes of selecting an HS category.

*Id*. at 21.

In addition, while invoking subheading Note 2 when it suits its purpose, the Remand

thereafter distances itself from relying on this Note in reasoning that "the HS note which Fufeng

references in its argument to the Court was not timely raised by Fufeng for consideration in

selecting an HS category and therefore not considered by Commerce in assigning an SV to value

Fufeng's reported coal FOP." Remand at 20. However, the Remand then contradicts itself by

noting that "Commerce identified the note on the record as part of Fufeng's surrogate value

submission at Exhibit 9H." *Id.* at 20. As such, the Remand's attempts to escape subheading Note 2 are unavailing.

Moreover, subheading Note 2 is discussed in Fufeng's initial 56.2 brief, Fufeng Opening Brief at 22, and the Remand states upfront that "our analysis of Fufeng's argument will be limited to the materials filed at the CIT." Remand at 10 n.36. As such, the Court should reject Commerce's excuses to avoid consideration of subheading Note 2.

Record evidence, discussed above, establishes that Fufeng utilized energy coal having heat values less than 5,800 kcal/kg, which is undeniably less than the threshold limit of 5,833 kcal/kg prescribed for classification under HTS 2701.12.9000. Section III.A, *supra*. As such, Fufeng's energy coal – regardless of its volatility content and non-coking designation – cannot be covered under HTS 2701.12.9000. Consequently, HTS 2702.12.9000 fails to satisfy Commerce's paramount product specificity criteria. *Taian Ziyang Food Co. v. United States*, 783 F. Supp. 2d 1292, 1330 (CIT 2011) ("'product specificity' logically must be the primary consideration in determining 'best available information.' If a set of data is not sufficiently 'product specific,' it is of no relevance whether or not the data satisfy the other criteria set forth in Policy Bulletin 04.1.") (citing *Hebei Metals & Minerals Imp. & Exp. Corp. v. United States*, 29 CIT 288, 300 (2005)).

In other words, HTS 2701.12.9000 covers a distinctly separate class of commercial grade bituminous non-coking coal having heat values invariably higher than Fufeng's energy coal. Because the most significant product-specificity attribute – heat value – of bituminous coal imported in HTS 2701.12.9000 is always higher than the heat value of Fufeng's energy coal, there is absolutely no overlap of this HTS subheading with Fufeng's energy coal. As such, the resulting average unit value ("AUV") under HTS 2701.12.9000 is not representative of the cost

of Fufeng's energy coal input, and cannot, as a matter of law, be used to value Fufeng's coal. *See Zhejiang Dunan Hetian Metal Co. v. United States*, 652 F.3d 1333, 1343 (Fed. Cir. 2011) ("It is judicially established that where a **"HTS heading**, **by definition, included materials that . . . {are} . . . not representative of the inputs** utilized by the manufacturer . . . calculating a {SV} on the basis of every material imported under the HTS heading . . . might well conflict with Commerce's obligation to use the best available evidence for its calculation of {SV}") (emphasis added)); *Longkou Haimeng Mach. Co. v. United States*, 33 CIT 603, 609 (2009) ("if Commerce selects a particular set of data that is demonstrably unrepresentative . . . , a reasonable mind may rightly question how such a selection could be considered the 'best'"); *Zhengzhou Harmoni Spice Co. v. United States,* 617 F. Supp. 2d 1281, 1297 (CIT 2009) ("The statutory objective of calculating dumping margins as accurately as possible can be achieved only when Commerce's choice as to what constitutes the best available *information evidences a rational and reasonable relationship to the factor of production that it represents.*") (emphasis added).

In contrast, Fufeng's energy coal input "is properly classified under subheading {2701.19}, HTSUS, because the goods indisputably fit within the plain language of that unambiguous subheading" based on the fact that the lower than 5,833 kcal/kg heat value covered under this subheading fully overlaps with the heat value of energy coal that Fufeng used. *Deckers Corp. v. United States*, 532 F.3d 1312, 1318 (Fed. Cir. 2008).

Established administrative practice and judicial precedent support the proposition that where competing HTS subheadings mirror the bright line divisions of a critical product specificity attribute underlying the goods being valued, Commerce is required to value the input based on the HTS subheading that covers that attribute. Examples include:

- <u>chemical composition</u>: alloy steel v. non-alloy steel. *Diamond Sawblades and Parts Thereof from China*, 79 Fed. Reg. 35,723(June 24, 2014) (final results),

IDM Comment 17 (selecting HTS subheadings specific to alloy hot-rolled and non-alloy cold-rolled steel inputs);

- cross-section profile: hot rolled steel v. cold rolled steel. *Peer Bearing Co.-Changshan v. United States*, 914 F. Supp. 2d 1343, 1349-50 (CIT 2013) (Commerce's SV "was unsustainable without a finding of fact, supported by substantial record evidence, that the input being valued was not of a circular cross-section.");

- diameter: *Vulcan Threaded Prods. Inc. v. United States*, 311 F. Supp. 3d 1357, 1364-65 (CIT 2018) ("Commerce selected the Bulgarian data, in part, because they were more specific with regard to diameter for steel wire rod.");

Notwithstanding its established practice as reflected in the above decisions, the Remand failed to use the heat value as the critical factor for valuing Fufeng's energy coal. Consequently, in light of the unrebutted evidence the heat value Fufeng's coal is less than the threshold limit of 5,833 kcal/kg, the Department's selection of HTS 2701.12.9000 to value coal and its rejection of HTS 2701.19 is contrary to law. *See, e.g.*, *Gerson Co. v. United States*, 898 F.3d 1232, 1235 (Fed. Cir. 2018) (holding that "when, as here, there is no dispute as to the nature of the merchandise, the two-step classification analysis 'collapses entirely into a question of law.'").

In sum, the Remand's adherence to HTS 2701.12.9000, to value coal, notwithstanding its express terms that unambiguously exclude bituminous coal having heat values lower than 5,833 kcal/kg (encompassing Fufeng's energy coal input), is contrary to controlling administrative practice and judicial precedent. In contrast, HTS 2701.19 is product-specific. Therefore, HTS 2701.19 affords a reliable and representative SV to value Fufeng's energy coal input.

### D.    The Remand's Rationale to Support HTS 2701.12.9000 Is Without Merit

The Remand's reasons for selecting HTS 2701.12.9000 are unsupported by record evidence and settled agency and judicial precedent, as discussed below.

First, Commerce's classification analysis is critically flawed. Its rationale that HTS

16

"2701.12.9000 explicitly covers bituminous and non-coking coal *as used by Fufeng*," ignores the critical fact that this HTS subheading expressly excludes lower heat value coal (< 5,833 kcal/kg) that Fufeng purchased to utilize for the specified energy content, *i.e.*, heat value, from such energy coal. Remand at 12 (emphasis added). As such, contrary to the Remand's presumption, Fufeng <u>did not use</u> higher heat value coal imported under HTS 2701.12.9000. Conversely, the rationale that "HS subheading 2701.19 is a broader category, which explicitly does not cover bituminous coal" ignores the fact that Note 2 to Chapter 27, provides that HTS 2701.19 exclusively covers coal having lower heat values (< 5,833 kcal/kg). And, as demonstrated *supra*, this lower heat value range fully overlaps with the heat value range of Fufeng's coal (< 5,800 kcal/kg). *Id*. Therefore, even if HTS 2701.19 arguably may be considered a relatively broader category than HTS 2701.12.9000, and its description, "Coal - Others" does not explicitly identify the subset of lower heat value non-coking bituminous coal, it is undeniably product-specific in relation to Fufeng's energy coal. In contrast, HTS 2701.12 undeniably is not product-specific.

Additionally, Commerce, without offering any evidentiary support, speculates that HTS 2701.19 "may include coking grade coal." *Id*. This speculation is negated by the fact that coking coal is expressly identified in HTS 2701.12.1000, *i.e.*, as a subset of higher heat value bituminous coal covered in HTS 2701.12. *Carbon Activated Tianjin Co. v. United* States, 2023 WL 4678995 *1, *15 (CIT July 21, 2023). The record does not contain any evidence that lower heat value coal also potentially could be of coking grade. Therefore, this speculative argument is unsupported. In view of the above, there is no merit to Commerce's contention that there is no "indication on the record of this review of the relevance of heat values in selecting between an HS subheading that explicitly excludes non-coking grade coal (*i.e.*, HS subheading 2701.12.9000) and one that does not reference the coking designation (*i.e.*, HS subheading

17

2701.19)." Remand at 14. The primary product-specificity attribute of heat value limits (specified in Chapter 27, Note 2) governs the scope of HTS 2701.12 (including 2701.12.9000) and 2701.19. A secondary attribute of coal - non-coking bituminous grade – cannot supersede the primary criteria. Moreover, regardless of its basket category nature and arguable inclusion of coking grade coal, HTS 2701.19 – unlike HTS 2701.12.9000 – does cover non-coking bituminous grade coal of lower heat value used by Fufeng.

Thus, regardless of the nominal descriptions attached to HTS 2701.12.9000 and 2701.19, both subheadings cover non-coking bituminous coal but only one – HTS 2701.19 – covers the heat value associated with Fufeng's energy coal. Therefore, contrary to the Remand, the most accurate valuation of "Fufeng's coal that is commercially traded as bituminous coal of a non-coking grade" can only be achieved under HTS 2701.19. *Id*.

The root cause of the Remand's erroneous analysis and conclusion is its adoption of a disjunctive analysis rather than the judicially mandated conjunctive "side-by-side" comparative analysis of available data choices and failure to "explain, why, on the whole," despite "different flaws," one was "a better source." *CP Kelco US, Inc. v. United States*, 2016 WL 1403657 *1, *2 (CIT Apr. 8, 2016) ("Commerce, by bifurcating its analysis into two steps, end-ran its obligation to base its decision in substantial evidence. . . . Given that both sets of financial statements had different flaws, Commerce 'should have compared the two side-by-side.'").

A conjunctive evaluation of the two HTS choices reveals that HTS 2701.12.9000, while nominally described as non-coking bituminous coal, covers only a subset of non-coking bituminous coal excluding Fufeng's lower heat value energy coal. In contrast, HTS 2701.19, despite not being labeled as a bituminous or non-coking coal, unambiguously covers Fufeng's

lower heat value non-coking bituminous coal. As such, unlike HTS 2701.12.9000, HTS 2701.19

satisfies Commerce's paramount product-specificity criteria.

Moreover, even if Commerce deemed both HTS choices as imperfect, it failed to

"conduct a fair comparison of the data sets on the record." *Allied Pacific Food (Dalian) Co. v.*

*United States*, 435 F. Supp. 2d 1295, 1313-14 (CIT 2006). As the CIT cautions:

> To support a {SV} with substantial evidence, Commerce "must do more than
> simply identify flaws in the data sets it rejects." *Guangdong Chems. Imp. & Exp.*
> *Corp. v. United States*, 30 CIT 1412, 1417 . . . (2006); *see also Shanghai Foreign*
> *Trade Enters. Co. v. United States*, 28 CIT 480, 495 . . . (2004) (noting that
> Commerce errs by "discard{ing} the alternatives as flawed" without
> "evaluat{ing} the reliability of its own choice"). "Commerce must also apply the
> same criteria to the data upon which it relies, and explain how the preferred data
> meet these criteria, or why a given criterion should not apply to the preferred
> data." *Guangdong Chems.*, 30 CIT at 1417.

*Xiamen Int'l Trade & Indus. Co. v. United States*, 953 F. Supp. 2d 1307, 1316 (CIT 2013).

A fair, even-handed conjunctive analysis of both HTS choices would have revealed that,

as compared to HTS 2701.12.9000, HTS 2701.19 is product-specific and an overwhelmingly

superior SV choice to value Fufeng's lower heat value non-coking bituminous grade energy coal.

Second, the Remand unpersuasively distinguishes judicially affirmed agency precedent

selecting HTS 2701.19 to value < 5,833 kcal/kg bituminous coal. To support its claim that

"*Activated Carbon 17-18 AR Remand* is inapposite", the Department reasons that in that case,

"Commerce analyzed whether it should value the respondent's bituminous coal using HS

subheading 2701.19 from Malaysia or HS subheading 2701.12 from Romania" and that

"Commerce selected HS subheading 2701.19, as opposed to HS subheading 2701.12, to value

the respondent's bituminous coal FOP based on the calorific value limit of the two subheadings

and the preference to value all FOPs from a single {surrogate country ("SC")}." Remand at 13.

The Remand misconstrues Commerce's findings in that proceeding where Commerce selected

Malaysian HTS 2701.19 over Romanian HTS 2701.19 and not Romanian HTS 2701.12. When

preferring Malaysian HTS 2701.19 over Romanian HTS 2701.19, Commerce invoked the

primary surrogate country as the tie breaker. As such, for valuing < 5,833 kcal/kg coal,

Commerce considered solely HTS 2701.19 options, while rejecting HTS 2701.12 based on

product-specificity (*i.e.*, heat value) considerations or distortion:

> Plaintiffs have not provided any evidence that the Malaysian HS 2701.19 data are
> aberrant or unreliable. . . . Plaintiffs have also failed to justify their position that
> Commerce should have found Malaysian HS 2701.19 data to be distorted simply
> because the agency separately found Malaysian HS 2701.12 data to be distorted.
> *See id.* Accordingly, **Plaintiffs' argument that Romanian HS 2701.19 data "is**
> **preferable to Malaysia** because ... Romanian {HS} 2701.12 data is undistorted,"
> …, **is without support**. Commerce has provided a reasoned explanation for not
> rejecting the Malaysian HS 2701.19 data—such import data is presumed to be
> reliable and the record is devoid of evidence to the contrary. . . .
>
> Commerce explained that it selected Malaysian HS 2701.19 data pursuant to its
> preference to value all factors of production in a single surrogate country, which,
> in this case, was Malaysia. .... **Plaintiffs have not shown that Commerce was**
> **unreasonable in its selection of Malaysian HS 2701.19 data to value bituminous**
> **coal when the record demonstrated that the coal had a calorific value of less**
> **than 5,833 kcal/kg** and Commerce's decision was otherwise supported by
> substantial evidence.

*Carbon Activated Tianjin Co., Ltd. v. United States*, 547 F. Supp. 3d 1310, 1318 (CIT 2021)

(emphases added).

Thus, the Remand unpersuasively reasons that "the HS subheading 2701.12 proposed in

the *Activated Carbon 17-18 AR Remand* is distinct from the HS subheading {2702.12.9000}

proposed here, because it is not from the primary SC and broader than the HS subheading

presented in the underlying proceeding." Remand at 13. In accordance with coal's "calorific

value" criteria, the Department in the *Activated Carbon 17-18 Remand* would have preferred

Malaysian HTS 2701.19 over Malaysian HTS 2701.12.9000.

Further, the Remand's conclusion that "because certain bituminous coal consumed by the

respondent in the *Activated Carbon 17-18 AR Remand* had a calorific value limit below 5,833

kcal/kg, and because Malaysia in that case was the primary SC, Commerce determined that HS

subheading 2701.19 was appropriate to value its coal FOP", is directly applicable to the instant case. *Id*. In view of this decision, the Remand's selection of Malaysian HTS 2701.12.9000 over Malaysian HTS 2701.19 is contrary to established agency precedent.

Similarly, there is no merit to the Remand's attempts to distinguish *Activated Carbon 19-20 AR* by reasoning that "because the respondent only used non-coking bituminous coal, Commerce determined that HS subheading 2701.12 was overly broad {and t}herefore . . . relied on HS subheading 2701.19 pursuant to the heat value as described in *Activated Carbon 17-18 AR Remand*." *Id*. at 13-14. In that case, the primary reason for rejecting HTS 2701.12 in favor of HTS 2701.19 was the heat value of coal, *i.e*., product-specificity consideration.

> We agree with the mandatory respondents' assertion that HTS 2701.12 is not specific to non coking bituminous coal. . . . As HTS 2701.19 is for heat values below 5,833 kcal/kg, it is necessarily more product-specific than HTS 2701.12. As the bituminous coal used by Datong Juqiang and its supplier fit that singular criterion, we will use HTS 2701.19 to value the mandatory respondents' bituminous coal raw material input for the final results.

*Certain Activated Carbon from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; and Final Determination of No Shipments; 2019-2020*, 86 Fed. Reg. 73,731 (Dec. 28, 2021), IDM Cmt. 4.

Conversely, HTS 2701.12's overly-broad nature was merely a secondary factor in the Department's decision making:

> Moreover, HTS 2701.12 is a basket category containing both coking and non-coking bituminous coal under HTS 2701.12.1000 and HTS 2701.12.9000, respectively. As Datong Juqiang and its supplier only used non-coking bituminous coal, HTS 2701.12 is an overly broad category.

*Id*.

Finally, Commerce's recent precedent provide additional support to the choice of HTS 2701.19 for valuing Fufeng's lower calorific value non-coking bituminous coal.

In *Activated Carbon 20-21 AR*, Commerce explained that "as only some of Datong Juqiang's test samples meet the requirements under Note 2 of Chapter 27, Commerce has determined that simple averaging the AUVs of HTS 2701.12 and 2701.19 is the most appropriate method for valuing Datong Juqiang's bituminous coal inputs." *Certain Activated Carbon from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; and Final Determination of No Shipments; 2020-2021*, 87 Fed. Reg. 67,671 (Nov. 9, 2022), IDM Cmt. 4. Consequently, Commerce valued bituminous coal with < 5,833 kcal/kg heat value under HTS 2701.19 while using HTS 2701.12 to value only bituminous coal having heat value ≥ 5,833 kcal/kg. Accordingly, to value Fufeng's < 5,800 kcal/kg heat value coal, this determination supports HTS 2701.19 over HTS 2701.12.9000.

Additionally, in *Activated Carbon AR 21-22*, Commerce likewise valued bituminous coal with lower heat value under HTS 2701.19 instead of HTS 2701.12.

> Commerce determines that none of the mandatory respondents' bituminous coal test samples meet the GCV threshold under Note 2 of Chapter 27 of the HS, i.e., a calorific value of 5,833 kcal/kg, to be classified as bituminous coal under HS 2701.12. . . . Therefore, for the final results, Commerce has determined to use the Malaysian import data reported under HS subheading 2701.19 to value the mandatory respondents' bituminous coal inputs.

*Certain Activated Carbon from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; and Final Determination of No Shipments; 2021-2022*, 88 Fed. Reg. 77,553 (Nov. 13, 2023), IDM Cmt. 1.

Notably, the record of *Activated Carbon AR 21-22* contained the AUVs under HTS 2701.12.9000: "Malaysian imports of bituminous coal under HS subheadings 2701.12.1000 and 2701.12.9000 are also consistent with prior segments." *Id.* The fact that Commerce followed its longstanding established practice to select HTS 2701.19 undermines the Remand's rationale for

selecting HTS 2701.12.9000, in which the Department accentuated coal's secondary attribute, grade – non-coking bituminous – over its primary product-specificity attribute of heat value.

    In sum, the Remand's rejection of product-specific HTS 2701.19 in favor of HTS 2701.12.9000 to value Fufeng's lower heat value non-coking bituminous coal is not supported by substantial evidence and is contrary to established precedent and to law.

## **CONCLUSION**

    For the foregoing reasons, Fufeng respectfully requests that this Court again remand this case for Commerce to reconsider its redetermination and recalculate Fufeng's ADD rate, based on this Court's instructions.

Respectfully submitted,

*/s/ Dharmendra N. Choudhary*
Ned H. Marshak
Dharmendra N. Choudhary*
Jordan C. Kahn*

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP
599 Lexington Ave., 36th Floor
New York, New York 10022
(212) 557-4000
**
*1201 New York Ave., NW, Suite 650
Washington, DC 20005
(202) 783-6881

*Counsel for Plaintiffs Neimenggu Fufeng Biotechnologies Co., Shandong Fufeng Fermentation Co., Ltd., and Xinjiang Fufeng Biotechnologies Co., Ltd.*

Dated: June 20, 2025

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Plaintiffs' Memorandum of Law In Support of Rule 56.2 Motion, as computed by Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt's word processing system Microsoft Word, is 7,079 words—less than the 10,000 word limit.

<u>/s/ *Dharmendra N. Choudhary*</u>

*Counsel for Plaintiffs Neimenggu Fufeng Biotechnologies Co., Shandong Fufeng Fermentation Co., Ltd., and Xinjiang Fufeng Biotechnologies Co., Ltd.*

Dated: June 20, 2025

13362203_1