IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE GARY S. KATZMANN, JUDGE

|  |  |  |
|---|---|---|
| NEIMENGGU FUFENG BIOTECHNOLOGIES CO., LTD., *ET AL.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| and | ) ) | |
| MEIHUA GROUP INTERNATIONAL (HONG KONG) LIMITED AND XINJIANG MEIHUA AMINO ACID CO., LTD., | ) ) ) ) | |
| Consolidated Plaintiffs, | ) ) | Consol. Court No. 23-00068 |
| v. | ) ) | |
| UNITED STATES, | ) ) | |
| Defendant. | ) ) ) | |

## <u>ORDER</u>

Upon consideration of the Department of Commerce's final results of redetermination

pursuant to remand, all responses thereto, and all other pertinent papers, it is hereby

ORDERED that the remand results are sustained in their entirety, and it is further

ORDERED that final judgment is entered for the United States.


_____
Gary S. Katzmann, Judge


Dated: _____, 2025
New York, New York

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE GARY S. KATZMANN, JUDGE

———————————————————————
|  )
NEIMENGGU FUFENG  )
BIOTECHNOLOGIES CO., LTD., *ET AL.*,  )
 )
Plaintiffs,  )
 )
and  )
 )
MEIHUA GROUP INTERNATIONAL  )
(HONG KONG) LIMITED AND XINJIANG  )
MEIHUA AMINO ACID CO., LTD.,  )
 )
Consolidated Plaintiffs,  )      Consol. Court No. 23-00068
 )
v.  )
 )
UNITED STATES,  )
 )
Defendant.  )
———————————————————————)

**DEFENDANT'S RESPONSE**
**TO PLAINTIFFS' COMMENTS ON THE REMAND REDETERMINATION**

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

TARA K. HOGAN
Assistant Director

Of Counsel:

SPENCER NEFF
Assistant Chief Counsel
Office of the Chief Counsel for
    Trade Enforcement & Compliance
U.S. Department of Commerce

DANIEL BERTONI
Trial Attorney
Commercial Litigation Branch
Civil Division, U.S. Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
(202) 880-0336

July 21, 2025

Attorneys for Defendant

## TABLE OF CONTENTS

**PAGE**

BACKGROUND ................................................................................................................. 1

    I.    The Underlying Administrative Determination .................................................... 1

    II.   The Court's Remand Order........................................................................................ 2

    III.  Commerce's Remand Results ............................................................................... 3

ARGUMENT ..................................................................................................................... 6

    I.    Standard of Review.................................................................................................... 6

    II.   Commerce's Remand Determination To Continue Directly Valuing Fufeng's Energy Is Supported By Substantial Evidence And Consistent With Agency Practice........................................................................................................ 6

    III.  Commerce's Determination To Value Fufeng's Coal Using HTS Subheading 2701.12.9000 Is Supported By Substantial Evidence And In Accordance With Law ................................................................................................................... 11

CONCLUSION................................................................................................................ 17

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Amanda Foods (Vietnam) Ltd. v. United States,*
    647 F. Supp. 2d 1368 (Ct. Int'l Trade 2009) .................................................... 12, 16

*Ancientree Cabinet Co. v. United States,*
    532 F. Supp. 3d 1241 (Ct. Int'l Trade 2021) ............................................. 15, 16, 17

*Ashley Furniture Indus., LLC v. United States,*
    607 F. Supp. 3d 1210 (Ct. Int'l Trade 2022) ......................................................... 12

*Bethlehem Steel Corp. v. United States,*
    223 F. Supp. 2d 1372 (Ct. Int'l Trade 2002) ........................................................... 6

*Carbon Activated Tianjin Co., Ltd. v. United States,*
    547 F. Supp. 3d 1310 (Ct. Int'l Trade 2021) ......................................................... 16

*Consol. Edison Co. v. NLRB,*
    305 U.S. 197 (1938) ............................................................................................... 6

*Consolo v. Fed. Mar. Comm'n,*
    383 U.S. 607 (1966) ........................................................................................... 6, 15

*Daewoo Elecs. Co. v. Int'l Union of Elec. Elec., Tech., Salaried & Mach. Workers, AFL-CIO,*
    6 F.3d 1511 (Fed. Cir. 1993) ................................................................................. 6

*Essar Steel Ltd. v. United States,*
    678 F.3d 1268 (Fed. Cir. 2012) ............................................................................. 8

*Matsushita Elec. Indus. Co. v. United States,*
    750 F.2d 927 (Fed. Cir. 1984) ............................................................................... 6

*Nation Ford Chem. Co. v. United States,*
    166 F.3d 1373 (Fed. Cir. 1999) ....................................................................... 10, 13

*Neimenggu Fufeng Biotechnologies Co., Ltd. v. United States,*
    741 F. Supp. 3d 1354 (Ct. Int'l Trade 2024) ............................................... *passim*

*Pokarna Engineered Stone Ltd. v. United States,*
    56 F.4th 1345 (Fed. Cir. 2023) ........................................................................ 10, 11

*QVD Food Co., Ltd. v. United States,*
    658 F.3d 1318 (Fed. Cir. 2011) ...................................................................... 15, 17

*United Steel & Fasteners, Inc. v. United States*,
  469 F. Supp. 3d 1390 (Ct. Int'l Trade 2020) ...................................................... 12, 16

*Xinjiamei Furniture (Zhangzhou) Co. v. United States*,
  968 F. Supp. 2d 1255 (Ct. Int'l Trade 2014) ............................................................ 6

*Zhaoqing Tifo New Fibre Co. v. United States*,
  60 F. Supp. 3d 1328 (Ct. Int'l Trade 2015) .............................................................. 7

*Zhejiang DunAn Hetian Metal Co. v. United States*,
  652 F.3d 1333 (Fed. Cir. 2011) ................................................................... 12, 16, 17

## **STATUTES**

19 U.S.C. § 1516a(b) .......................................................................................................... 6

19 U.S.C. § 1677b(c) ..................................................................................................... 7, 10

## **REGULATIONS**

19 C.F.R. § 351.301(c) ..................................................................................................... 13

19 C.F.R. § 351.408(c) ..................................................................................................... 16

## **ADMINISTRATIVE DETERMINATIONS**

*Certain Activated Carbon from the People's Republic of China*,
  86 Fed. Reg. 73,731 (Dep't of Commerce Dec. 28, 2021) ..................................... 16

*Certain Activated Carbon from the People's Republic of China*,
  87 Fed. Reg. 67,671 (Dep't of Commerce Nov. 9, 2022) ....................................... 16

*Certain Activated Carbon from the People's Republic of China*,
  88 Fed. Reg. 77,553 (Dep't of Commerce Nov. 13, 2023) ..................................... 16

*Citric Acid and Certain Citrate Salts from the People's Republic of China*,
  74 Fed. Reg. 16,838 (Dep't of Commerce Apr. 13, 2009) ........................................ 3

*Xanthan Gum from the People's Republic of China*,
  78 Fed. Reg. 33,351 (Dep't of Commerce Jun. 4, 2013) .......................................... 4

*Xanthan Gum from the People's Republic of China*,
  84 Fed. Reg. 64,831 (Dep't of Commerce Nov. 25, 2019) ....................................... 2

*Xanthan Gum from the People's Republic of China*,
    87 Fed. Reg. 47,970 (Dep't of Commerce Aug. 5, 2022) .......................................................... 1

*Xanthan Gum From the People's Republic of China*,
    88 Fed. Reg. 9,861 (Dep't of Commerce Feb. 15, 2023) .......................................................... 1

Defendant, the United States, respectfully submits this response to the comments by plaintiffs, Neimenggu Fufeng Biotechnologies Co., Ltd., Shandong Fufeng Fermentation Co., Ltd., and Xinjiang Fufeng Biotechnologies Co., Ltd. (collectively, Fufeng) concerning the results of Court's remand to the Department of Commerce. *See Final Results of Redetermination Pursuant to Court Remand*, ECF No. 53-1 (May 6, 2025) (Remand Results). We respectfully request that the Court sustain the remand results because they are supported by substantial evidence, are otherwise lawful, and comply with the Court's instructions on remand. *See Neimenggu Fufeng Biotechnologies Co., Ltd. v. United States*, 741 F. Supp. 3d 1354, 1370, 1376 (Ct. Int'l Trade 2024) (*Remand Order*).

## BACKGROUND

I. The Underlying Administrative Determination

This case derives from Fufeng's challenge to the final results of the 2020-2021 administrative review of the antidumping order covering xanthan gum from the People's Republic of China. *Xanthan Gum From the People's Republic of China*, 88 Fed. Reg. 9,861 (Dep't of Commerce Feb. 15, 2023) (P.R. 241) (Final Results) and accompanying Issues and Decision Memorandum (P.R. 233) (IDM). Commerce calculated normal value for mandatory respondent Fufeng using a factors-of-production methodology. *See Xanthan Gum from the People's Republic of China*, 87 Fed. Reg. 47,970 (Dep't of Commerce Aug. 5, 2022) (P.R. 202) (Preliminary Results) and accompanying Issues and Decision Memorandum at 18-21 (P.R. 196) (PDM) (discussing Commerce's factors-of-production methodology).

In its preliminary results, Commerce selected a surrogate value for the coal that Fufeng used for energy based on Harmonized Tariff Schedule (HTS) subheading 2701.12.9000, which covers:

> Mineral Fuels, Mineral Oils And Products Of Their Distillation;
> Bituminous Substances; Mineral Waxes; — Coal; Briquettes,
> Ovoids And Similar Solid Fuels Manufactured From
> Coal; — Bituminous Coal, Whether Or Not Pulverized, But Not
> Agglomerated; — Coal, Whether Or Not Pulverised, But Not
> Agglomerated: Bituminous Coal: O/T Coking Coal.

Preliminary Surrogate Value Spreadsheet, tab SV at cells D32-33 (Aug. 1, 2022) (P.R. 198).

In the final results, in a change from the preliminary results, Commerce took advantage of the different way that the surrogate company, Ajinomoto (Malaysia) Berhad (Ajinomoto), reported its financial information. This change in Ajinomoto's financial reporting allowed Commerce to value Fufeng's energy factor of production directly, rather than indirectly as part of the selling, general, and administrative (SG&A) expense ratio. IDM at 11-14. Commerce retained its preliminary selection of HTS subheading 2701.12.9000 to value Fufeng's coal.

Fufeng and non-selected respondents Meihua Group International (Hong Kong) Ltd. and Xinjiang Meihua Amino Acid Co., Ltd. (collectively, Meihua) sought judicial review of the final results, challenging, among other aspects of the final results, Commerce's determination to directly value Fufeng's energy factor of production and to base its surrogate value for coal on HTS subheading 2701.12.9000.

II.    The Court's Remand Order

On December 16, 2024, the Court remanded Commerce's final results for further consideration. *Remand Order*, 741 F. Supp. 3d at 1370, 1376. Specifically, the Court held that Commerce did not adequately explain why it directly valued Fufeng's energy factor of production based on Ajinomoto's new financial reporting in light of Commerce's past practice, including past reviews of the underlying antidumping order in which Commerce had indirectly valued energy based on Ajinomoto's financial statements. *Id.* at 1367-70 (citing *Xanthan Gum from the People's Republic of China*, 84 Fed. Reg. 64,831 (Dep't of Commerce Nov. 25, 2019)

and accompanying IDM (Xanthan Gum 2017-18 IDM) at Comment 4; *Citric Acid and Certain Citrate Salts from the People's Republic of China*, 74 Fed. Reg. 16,838 (Dep't of Commerce Apr. 13, 2009) and accompanying IDM (Citric Acid IDM) at Comment 2. The Court therefore ordered Commerce on remand to reconsider or further explain this aspect of its determination, clarifying that it "d{id} not compel a result on remand." *Id.* at 1370. Rather, the Court allowed that:

> Commerce may, for instance, attempt to explain why the change in Ajinomoto's financial reporting between prior administrative reviews and the Final Review constitutes substantial evidence for the direct valuation of Fufeng's reported energy costs. Alternatively, perhaps, Commerce may attempt to explain its rationale for any change in agency practice that the direct-valuation determination in this case might represent.

*Id.*

The Court also decided that Fufeng was not required to have administratively exhausted its arguments in favor of using the different HTS subheading 2701.19 for valuing its energy coal. *Remand Order*, 741 F. Supp. 3d at 1375. The Court held that Commerce had not adequately addressed its selection of the subheading in the final results, because Commerce had determined that Fufeng's administrative submissions were based on untimely new factual information. *Id.* at 1375-76. Therefore, if Commerce decided on remand to continue to directly value Fufeng's energy factor of production, the Court ordered Commerce to "determine in the first instance — upon consideration of Fufeng's agency- and USCIT-level filings — whether HTS 2701.12.9000 or HTS 2701.19 is the proper subheading for the valuation of Fufeng's coal factor of production." *Id.* at 1376.

III.    <u>Commerce's Remand Results</u>

On remand, Commerce, with further explanation, reaffirmed its determination to directly value Fufeng's energy factor of production. Remand Results at 4-9, 16-18. Commerce stated

that its decision did not represent a change in its practice, but rather served to promote accuracy and avoid double-counting in response to the unique facts presented by Fufeng's energy-intensive production of xanthan gum and the new detail present in Ajinomoto's 2021 financial statements. *Id.* at 4-5. Commerce explained that in this review, unlike in prior proceedings, Ajinomoto's 2021 financial statements "allowed Commerce to continue to isolate and value the *majority* of SG&A expenses while simultaneously using Fufeng's own {factors of production} to value energy." *Id.* at 7 (emphasis added). Commerce found that the facts of this review were distinct from those in the Citric Acid review, where Commerce was "seemingly unable to segregate energy and overhead expenses at all." *Id.* at 8 (citing Citric Acid IDM at Comment 2).

Because Ajinimoto's 2021 financial statement permitted Commerce to isolate a majority of SG&A expenses, Commerce determined that, "unlike in prior reviews, the level of imprecision involved in segregating energy here does not warrant valuing energy indirectly." *Id.* at 7-8. In particular, Commerce observed that "the importance of direct valuation of energy in an energy-intensive production process outweighs the potential removal of a share of SG&A expenses." *Id.* at 8; *see also Xanthan Gum from the People's Republic of China* 78 Fed. Reg. 33,351 (Dep't of Commerce Jun. 4, 2013) and accompanying IDM (Xanthan Gum Investigation IDM) at 17 (stating a preference for directly valuing energy, when possible, and finding the xanthan gum production process to be energy-intensive). Commerce supported its finding regarding the relative importance of energy in xanthan gum production by comparing the total energy expense calculated by Commerce to the total direct materials expense. *See* Remand Results at 9 (citing Fufeng Final Calculation Memorandum (Feb. 30, 2023) (P.R. 234) at attachment VI (C.R. 186)).

Because Commerce reaffirmed its decision to directly value Fufeng's energy factor of production, Commerce addressed the second component of the Court's remand order and explained why it selected HTS 2701.12.9000 rather than HTS 2701.19 to value coal. Remand Results at 10-15, 19-26. In contrast to subheading 2701.12.9000, which covers bituminous coal other than coking coal, subheading 2701.19 covers "Coal, Other Than Anthracite Or Bituminous, Whether Or Not Pulverized, But Not Agglomerated." *Id.* at 12. Commerce explained that it selected subheading 2701.12.9000 because it covers exclusively bituminous and non-coking coal, whereas subheading 2701.19 does not cover bituminous coal and may potentially cover coking-grade coal. *Id.* at 13.

Commerce also followed the Court's instruction to consider the arguments Fufeng had made in favor of subheading 2701.19,[1] rejecting Fufeng's contention that its claim that its coal had a heat value of less than 5,800 kcal/kg meant that selection of 2701.19 was mandatory. *Id.* at 13-15. Rather, Commerce explained that its selection of 2701.12.9000 accounted for the definitively non-coking and bituminous nature of Fufeng's coal, as opposed to the broader category of 2701.19, which was explicitly non-bituminous and made no reference to whether the coal was coking or non-coking. *Id.* at 14-15. Commerce observed that its reliance on coal's heat value in a separate review to help select the proper HTS subheading did not mean that the heat value characteristic made the other characteristics of the coal irrelevant in this review. *Id.* at 13-14 (discussing Final Results of Redetermination Pursuant to Court Remand, *Carbon Activated Tianjin Co., Ltd. v. United States*, No. 20-00007 (Ct. Int'l Trade June 30, 2021), ECF No. 68).

---

[1] Commerce primarily addressed the arguments Fufeng made in its brief to this Court, ECF No. 25, because Commerce's record did not contain the arguments that had been removed from the agency-level record, and the Court did not order Commerce to reopen the record. Remand Results at 10 n.36.

# ARGUMENT

## I.    Standard of Review

"The same standard of review applies to the review of a remand determination as to the review of the original determination." *Bethlehem Steel Corp. v. United States*, 223 F. Supp. 2d 1372, 1375 (Ct. Int'l Trade 2002) (citations omitted).  Accordingly, the Court sustains any determination, finding, or conclusion found by Commerce unless it is unsupported by substantial evidence on the record, or otherwise not in accordance with law.  19 U.S.C. § 1516a(b)(1)(B). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  The possibility of drawing inconsistent conclusions from the record does not prevent Commerce's findings from being supported by substantial evidence.  *See Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).  The question for the Court is whether Commerce's determination is supported by "the evidence and reasonable inferences from the record." *Daewoo Elecs. Co. v. Int'l Union of Elec. Elec., Tech., Salaried & Mach. Workers, AFL-CIO*, 6 F.3d 1511, 1520 (Fed. Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984)).

Remand redeterminations are also reviewed for compliance with the Court's order. *Xinjiamei Furniture (Zhangzhou) Co. v. United States*, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l Trade 2014).

## II.    Commerce's Remand Determination To Continue Directly Valuing Fufeng's Energy Is Supported By Substantial Evidence And Consistent With Agency Practice

Commerce complied with the Court's remand order and specifically with the Court's allowance that Commerce could "explain why the change in Ajinomoto's financial reporting between prior administrative reviews and the {final results} constitutes substantial evidence for

the direct valuation of Fufeng's reported energy costs." *See Remand Order*, 741 F. Supp. 3d at 1370. Moreover, Commerce's determination is supported by substantial evidence, in accordance with law, and consistent with Commerce's past practice.

When analyzing exports from a nonmarket economy, Commerce must determine normal value "on the basis of the value of the factors of production utilized in producing the merchandise." 19 U.S.C. § 1677b(c)(1) "Amounts of energy and other utilities consumed" form part of the factors of production to be valued by Commerce. *Id.* § 1677b(c)(3)(C). When faced with an energy-intensive process such as xanthan gum production, Commerce has a preference for using a respondent's actual reported energy factors of production. *See* Xanthan Gum Investigation IDM at 17. However, as a matter of law and agency practice, Commerce will refrain from using a methodology that double-counts factors of production. *See Remand Order*, 741 F. Supp. 3d at 1361 (citing *Zhaoqing Tifo New Fibre Co. v. United States*, 60 F. Supp. 3d 1328, 1333 n.6 (Ct. Int'l Trade 2015)); *see also* Citric Acid IDM at Comment 2.

Commerce relies on surrogate financial statements to calculate SG&A ratios. In prior proceedings (including prior segments of this review), Commerce has incorporated energy factors of production into its calculation of a surrogate value for SG&A. *See* Xanthan Gum 2017-18 IDM at Comment 4; Citric Acid IDM at Comment 2. When Commerce has indirectly valued energy in this manner, it has done so because the information contained in surrogate financial statements on the record did not permit Commerce to directly value energy without also double-counting amounts for SG&A. *See, e.g.,* Xanthan Gum 2017-18 IDM at 12 ("{B}ecause {Ajinomoto's} income statement does not separately identify energy expenses, and such expenses cannot be excluded from the financial ratios calculated from {Ajinomoto's} financial

statements, we have not separately valued respondents' energy inputs to avoid double counting.").

In this review, Commerce valued energy directly because it found that Ajinomoto's 2021 financial statements were different from the financial statements on the record of prior reviews, such that Commerce could directly value energy without double-counting. Remand Results at 8; IDM at 11-14. Specifically, Ajinomoto's 2021 financial statements broke the line item for "other operating expenses" into "selling and distribution expenses" and "administrative and other expenses." Remand Results at 6; IDM at 12-13; see also Fufeng's Surrogate Value Comments (Mar. 31, 2022), Exhibit 8 at 49, 70 (P.R. 147-149) (Ajinomoto's 2021 Financial Statements). Commerce found, and Fufeng does not contest, that energy costs were contained in the "administrative and other expenses" sub-line item. Remand Results at 7; IDM at 13.

In response to the Court's instruction to "explain why the change in Ajinomoto's financial reporting between prior administrative reviews and the {final results} constitutes substantial evidence for the direct valuation of Fufeng's reported energy costs," Remand Order, 741 F. Supp. 3d at 1370, Commerce described how the change in Ajinomoto's financial statements "allowed Commerce to continue to isolate and value the majority of SG&A expenses while simultaneously using Fufeng's own {factors of production} to value energy," Remand Results at 7 (emphasis added). Commerce's explanation, which is based on the fact that directly valuing energy permitted it to value the majority of SG&A expenses through the SG&A ratio, but also to use Fufeng's own costs for energy, is based on substantial evidence "as a reasonable mind might accept as adequate to support {Commerce's} conclusion." See Essar Steel Ltd. v. United States, 678 F.3d 1268, 1272 (Fed. Cir. 2012). Moreover, Commerce's determination follows its stated preference for directly valuing energy for energy-intensive industries, which Commerce applied

here because the calculated energy expenses for Fufeng exceeded Fufeng's direct materials expenses.  Remand Results at 9; *See* Xanthan Gum Investigation IDM at 17 (describing Commerce's preference for directly valuing energy in energy-intensive production processes).

Fufeng disagrees.  Pl. Comments in Opp. to Remand Redetermination (Pl. Comments) at 2-6, ECF No. 58.  Fufeng first argues that Commerce erred in comparing its calculated energy expense to overall material expenses, because the energy expenses derive from Commerce's use of HTS subheading 2701.12.9000.  *Id.* at 3-4 (citing Remand Results at 9).  As we explain below, Commerce's selection of HTS subheading 2701.12.9000 is supported by substantial evidence, which renders this argument toothless.  More generally, Fufeng's critique misses Commerce's point, which is that xanthan gum production is an energy-intensive industry.  Commerce made a similar finding in the investigation, and no party has disputed this fact.  *See* Xanthan Gum Investigation IDM at 17.  The point of Commerce's comparison of energy and materials expenses was to demonstrate the potentially distortive effect of the indirect valuation methodology, which is, in Commerce's words, "an imperfect approach, because it requires Commerce to zero out the energy usage reported by Fufeng, effectively disregarding the entirety of Fufeng's actual energy reporting in calculating {normal value}."  *See* Remand Results at 17.

Fufeng's next arguments challenge the accuracy of the results of Commerce's decision to value energy directly.  Pl. Comments 4-5.  Fufeng believes that direct valuation results in "distorted overhead and SG&A ratios."  *Id.* at 4.  We recognize that Commerce's determination to directly value energy using Ajinomoto's sub-line item for "administrative and other expenses" will result in valuing certain SG&A expenses through a surrogate value for energy.  But Commerce found this approach to be more accurate than the alternative, which is to value the entirety of Fufeng's energy inputs using a surrogate SG&A ratio.  As the Court explained,

"{w}here two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *Remand Order*, 741 F. Supp. 3d at 1368 (quoting *Pokarna Engineered Stone Ltd. v. United States*, 56 F.4th 1345, 1349 (Fed. Cir. 2023)).  Moreover, "Commerce's valuation of factors of production is an area of even-broader-than-usual statutory discretion." *Id.* (citing *Nation Ford Chem. Co. v. United States*, 166 F.3d 1373, 1377 (Fed. Cir. 1999)).  On remand, Commerce found that "energy expenses are sufficiently isolated such that {Commerce is} able to exclude energy costs from the calculation of surrogate financial ratios while still including an amount for SG&A in the numerator of the ratio."  Remand Results at 8.  Commerce supported its use of this "necessarily imprecise" method by both the energy-intensive nature of producing xanthan gum and the fact that over half of Ajinomoto's reported "other operating expenses" remained in the numerator of the SG&A ratio.  Commerce's decision is therefore supported by substantial evidence.

Fufeng's final argument grows from the mistaken premise that an indirect valuation methodology is inherently more accurate than the alternative.  Pl. Comments at 5-6.  To make this argument, Fufeng flips the antidumping duty law on its head.  The statute directs Commerce to "determine the normal value of the subject merchandise on the basis of the value of the factors of production utilized in producing the merchandise," and provides that "{a}mounts of energy and other utilities consumed" is one of the factors of production to be valued by Commerce.  19 U.S.C. § 1677b(c)(1), (3)(C).  Consistent with the statute, Commerce's practice is to directly value energy where it is possible to do so while avoiding double-counting.  This statutory prerogative is heightened for energy-intensive products such as xanthan gum.  *See* Xanthan Gum Investigation IDM at 17.  Therefore, the statute and Commerce's practice indicate that, all other

things being equal, directly valuing energy is preferable and more accurate than treating energy as an SG&A expense.

Nevertheless, Fufeng appears to take indirect valuation as the default and argues that Commerce "fail{ed} to weigh the presumably enhanced margin accuracy (based on the direct valuation of energy {factors of production}) against the actually reduced margin accuracy (resulting from distorted overhead and SGA ratios){.}"  Pl. Comments at 5 (quoting Pl. Mot. for J. on the Agency Record at 19, ECF No. 25) (emphasis removed).  Fufeng would require Commerce to apply a "conjunctive, comparative analysis of all aspects involved in the direct and indirect valuation of Fufeng's energy inputs." *Id.* at 6.  Fufeng misplaces the burden.  Here substantial evidence supports Commerce's to value energy directly.  Commerce need not employ a method of analysis it has chosen not to pursue in order to disprove a plaintiff's possible future objections. *See Pokarna Engineered Stone*, 56 F.4th at 1349.  In any event, it is unclear how Fufeng would determine which approximation — whether treating energy as a component of a surrogate ratio or directly valuing energy using an overinclusive sub-line item from a surrogate financial report — yields a more accurate margin. *See* Pl. Comments at 5.

That Fufeng disagrees with the fact-based conclusion drawn by Commerce is no grounds for finding that Commerce's decision is unsupported by substantial evidence.  Commerce's decision to directly value energy should be sustained.

III.   Commerce's Determination To Value Fufeng's Coal Using HTS Subheading
       2701.12.9000 Is Supported By Substantial Evidence And In Accordance With Law

Commerce's decision to value Fufeng's coal inputs using HTS subheading 2701.12.9000 is supported by substantial evidence, because the record shows that the coal inputs used by Fufeng are bituminous and of a non-coking grade, and because Commerce found those considerations to be most relevant in selecting from the HTS subheadings on the record.  Further,

Commerce complied with the Court's remand record by considering Fufeng's arguments related to its contention that subheading 2701.19 was more appropriate. *See Remand Order,* 741 F. Supp. 3d at 1376.

When Commerce evaluates factors of production, "the critical question" is whether Commerce uses the "best available information." *Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1341 (Fed. Cir. 2011) (cleaned up)). The Court should sustain a determination if "a reasonable mind could conclude that Commerce chose the best available information." *Id.* (cleaned up); *Amanda Foods (Vietnam) Ltd. v. United States*, 647 F. Supp. 2d 1368, 1378 (Ct. Int'l Trade 2009). In making use of the information on the record, "there is no principle requiring Commerce to select the most specific HTS category. Rather, Commerce has discretion to select a reasonable surrogate" in light of the relevant criteria. *United Steel & Fasteners, Inc. v. United States*, 469 F. Supp. 3d 1390, 1400 (Ct. Int'l Trade 2020).

As articulated in the remand results, Commerce's practice is to "weigh available information with respect to each input value and make a product-specific and case-specific decision as to what the 'best' {surrogate value} is for each input." Remand Results at 13 (quoting *Ashley Furniture Indus., LLC v. United States*, 607 F. Supp. 3d 1210, 1234 (Ct. Int'l Trade 2022)). Commerce does not have a practice of selecting surrogate values across proceedings, because each surrogate value is necessarily specific to the information on the record and the nature of the inputs reported by respondents. *Id.* at 13, 23.

The record shows that the coal used by Fufeng: (1) was commercially traded as bituminous; (2) was of a non-coking grade; and (3) had a calorific value limit of less than 5800 kcal/kg. Remand Results at 11 (citing Fourth Supplemental Questionnaire Response at 5 (Jul. 28, 2022) (P.R. 194) (Fufeng 4th SQR); Section D Supplemental Questionnaire Response at 6

(Feb. 16, 2022) (P.R. 126) (Fufeng Section D SQR).  Based on this record evidence, Commerce

selected HTS subheading 2701.12.9000 because that subheading is most specific to Fufeng's

bituminous and non-coking coal.  *Id.* at 13, 25.  Commerce also found that subheading 2701.19

is broader, does not cover bituminous coal, and may include coking grade coal.  *Id.* at 13.

Therefore, Commerce's determination, especially given its discretion in valuating factors of

production and the information on the record, is supported by substantial evidence.  *See Nation

Ford*, 166 F.3d at 1377 ("{The statute} accords Commerce wide discretion in the valuation of

factors of production in the application of those guidelines.").

Fufeng bases much of its argument on Commerce's rejection of its "coal test certificates,"

which Fufeng claims establish that Fufeng's coal has heat values of less than 5,833 kcal/kg.  Pl.

Comments at 9-11.  Fufeng made the same argument in its Rule 56.2 Motion for Judgment on the

Agency Record, ECF No. 25 at 26-30, and the Court did not order Commerce on remand to

reopen the record or otherwise consider coal test certificates that were not on the agency record,

*see Remand Order,* 741 F. Supp. 3d at 1371 n.9, 1376.  Therefore, because the information

already on the record was sufficient to value Fufeng's factors of production, Commerce did not

reopen the record on remand.  Remand Results at 21.

Contrary to Fufeng's argument, reopening the record is not the "logical corollary" to the

Court's order to address Fufeng's arguments in the first instance.  *See* Pl. Comments at 9.  This is

so not least because, by regulation, the record with respect to surrogate value information closes

prior to any preliminary determination.  *See* 19 C.F.R. § 351.301(c)(3)(ii) (2013) (providing that

the deadline for information to value factors of production is 30 days before the scheduled date

of a preliminary results of an administrative review).  Therefore, even if Fufeng could not know

in advance what Commerce's preliminary selection of a surrogate value for coal would be,

Fufeng was nevertheless required to timely submit all surrogate value information — including its coal test certificates — that it wished Commerce to consider.

In any event, it is irrelevant whether the coal test certificates are on the record of this proceeding for two reasons. First, Commerce has acknowledged Fufeng's questionnaire response regarding its coal's heat value. *See* Fufeng Section D SQR at 6. Second, the record does not establish that the coal test certificates are determinative of Commerce's selection of the best available HTS subheading. Remand Results at 11, 20-21.

Indeed the record contains no evidence to support Fufeng's argument that heat value should be the primary attribute for purposes of product specificity. The only place in the record that even addresses the relevance of heat value is exhibit 9H to Fufeng's surrogate value submission. This "evidence," which is a memorandum produced by Commerce in 2015 during a prior review, provides that:

> Bituminous coal is defined in the U.S./Thai tariff schedules under the notes to Chapter 27 (coal products) as coal having a volatile matter percentage (on a dry, mineral-matter-free basis) exceeding 14 percent and a calorific value (on a moist, mineral-matter-free basis) equal to or greater than 5,833 kcal/kg.

Remand Results at 20 (citing Preliminary Results Analysis Memorandum at 3 (July 31, 2015) (included in Fufeng's Surrogate Value Comments at Exh. 9H (Mar. 31, 2022) (P.R. 150)). This statement by Commerce — not by Fufeng — does not obviously exclude Fufeng's coal, which Fufeng described both as being bituminous and as having a heat value of less than 5,833 kcal/kg. *Compare* Fufeng Section D SQR at 6 (Feb. 16, 2022) (P.R. 126) ("{T}he coal utilized by Fufeng as a source of energy had a calorific value limit (on a moist, mineral-matter-free basis) less than 5800 Kcal/Kg.") *with* Fufeng 4th SQR at 5 (P.R. 194) (describing Fufeng's coal as "a type of coal that is commercially traded as a bituminous coal"). In any event, Commerce's 2015

memorandum does not address what weight Commerce should place on Fufeng's reported "non-coking" designation.  *See* Fufeng 4th SQR at 5. ("Fufeng's coal is exclusively of a non-coking grade.").  Therefore, the 2015 memorandum, to the extent that it bears at all on Commerce's surrogate value selection, does not constitute evidence that warrants reversal of Commerce's finding under a substantial evidence standard.  *See Consolo*, 383 U.S. at 620 ("{T}he possibility of drawing two inconsistent conclusions from the record does not prevent an administrative agency's finding from being supported by substantial evidence.").

Fufeng then — with nearly no citation to the record — offers ten pages of argument on why the heat value of its coal should be determinative of the HTS subheading.  *See* Pl. Comments at 14-23.  In so doing, Fufeng implicitly acknowledges the thinness of the record.  It was ultimately Fufeng's responsibility to populate the record with information, especially when Commerce granted Fufeng multiple open-ended opportunities to provide information regarding the appropriate surrogate value for coal.  *See* Request for Surrogate Value Comments (Jan. 5, 2022) (P.R. 91); Supplemental Questionnaire at 4 (Jan. 28, 2022) (P.R. 107); Third Supplemental Questionnaire at 4 (Apr. 26, 2022) (P.R. 154).  "The burden of creating an adequate record lies with interested parties and not with Commerce."  *QVD Food Co., Ltd. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011) (cleaned up).  Fufeng failed to provide evidence supporting its preferred HTS subheading, and Commerce acted within the record before it.  *See Ancientree Cabinet Co. v. United States*, 532 F. Supp. 3d 1241, 1263 (Ct. Int'l Trade 2021) ("Commerce was given a limited record and, as a result, used the information at its disposal to match the sawnwood inputs with a surrogate HTS heading that was sufficiently product-specific.").  In short, Fufeng did not take advantage of the multiple opportunities to build the record before Commerce in the first instance.

Realizing that it cannot rely on the record, Fufeng turns to Court precedent and administrative results from Commerce's reviews of other merchandise to recharacterize the limited facts it presented to Commerce.  *See* Pl. Comments at 20-23 (citing *Carbon Activated Tianjin Co., Ltd. v. United States*, 547 F. Supp. 3d 1310 (Ct. Int'l Trade 2021); *Certain Activated Carbon from the People's Republic of China*, 86 Fed. Reg. 73,731 (Dep't of Commerce Dec. 28, 2021) and accompanying IDM at Comment 4; *Certain Activated Carbon from the People's Republic of China*, 87 Fed. Reg. 67,671 (Dep't of Commerce Nov. 9, 2022) and accompanying IDM at Comment 4; *Certain Activated Carbon from the People's Republic of China*, 88 Fed. Reg. 77,553 (Dep't of Commerce Nov. 13, 2023) and accompanying IDM at Comment 1)).  The cases cited by Fufeng are not dispositive, for the simple reason that surrogate value determinations are inherently record-based.  Remand Results at 23; *Zhejiang DunAn*, 652 F.3d at 1341; *Amanda Foods*, 647 F. Supp. 2d at 1378; *United Steel & Fasteners*, 469 F. Supp. 3d at 1400.  As Commerce explained, "{i}f Commerce were able to simply assign {surrogate values} based on determinations made in prior segments, there would be no need for Commerce to gather review-specific {surrogate value} information in the first place."  Remand Results at 23 (citing 19 C.F.R. 351.408(c)).

Fufeng nevertheless attempts to derive a general principle from fact-dependent cases: that Commerce must always use subheading 2701.19 to value coal with a heat value less than 5,833 kcal/kg.  But this principle is largely inapplicable to the record of this review, where Fufeng did not itself explain why heat value should be treated as the most important factor in the selection of a surrogate value.  *See Ancientree Cabinet Co.* 532 F. Supp. 3d at 1263.  More importantly, the record demonstrates that Commerce selected HTS subheading 2701.12.9000 because that subheading is most specific to Fufeng's bituminous and non-coking coal.  Remand

Results at 13, 25.  By contrast, Commerce found that subheading 2701.19 is broader, does not cover bituminous coal, and may include coking grade coal.  *Id.* at 13.  Accordingly, a "reasonable mind could conclude that Commerce" selected HTS subheading 2701.12.9000 based on the best information before it.  *See Zhejiang DunAn*, 652 F.3d at 1341.  Commerce need not have mined the record of other proceedings to gauge the relevance of every single surrogate value when Fufeng had been invited to provide that information itself.  *See QVD Food*, 658 F.3d at 1324; *Ancientree Cabinet Co.* 532 F. Supp. 3d at 1263.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's remand redetermination and enter judgment in favor of the United States.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>BRETT A. SHUMATE<br>Assistant Attorney General</td></tr>
<tr><td></td><td>PATRICIA M. McCARTHY<br>Director</td></tr>
<tr><td></td><td>/s/ Tara K. Hogan<br>TARA K. HOGAN<br>Assistant Director</td></tr>
<tr><td>Of Counsel:</td><td>/s/ Daniel Bertoni<br>DANIEL BERTONI<br>Trial Attorney</td></tr>
<tr><td>SPENCER NEFF<br>Assistant Chief Counsel<br>Office of the Chief Counsel for<br>    Trade Enforcement & Compliance<br>U.S. Department of Commerce</td><td>Commercial Litigation Branch<br>Civil Division<br>U.S. Department of Justice<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, DC 20044<br>(202) 880-0336</td></tr>
<tr><td>July 21, 2025</td><td>Attorneys for Defendant</td></tr>
</table>

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing document complies with section 2(B) of the Standard

Chambers Procedures of the United States Court of International Trade, because it contains

4,970 words, including text, footnotes, and headings.

/s/ Daniel Bertoni

.