A-570-985
Remand
Slip Op. 26-8
POR:  07/01/2020 – 06/30/2021
**Public Document**
E&C/OIV: JM

***Neimenggu Fufeng Biotechnologies Co. v. United States*,**
**Consol. Court No. 23-00068, Slip Op. 26-8 (January 30, 2026)**
**Xanthan Gum from the People's Republic of China**

**FINAL RESULTS OF REDETERMINATION PURSUANT**
**TO COURT REMAND**

**I.    SUMMARY**

The U.S. Department of Commerce (Commerce) prepared these final results of

redetermination pursuant to the remand order of the U.S. Court of International Trade (CIT or

the Court) in *Neimenggu Fufeng Biotechnologies Co. v. United States*.[1]  This litigation pertains

to certain issues in the final results of the administrative review of the antidumping duty (AD)

order on xanthan gum from the People's Republic of China (China), covering the July 1, 2020,

through June 30, 2021, period of review (POR).[2]

The CIT remanded for Commerce to "reconsider which of {Harmonized System (HS)}

2701.12.9000 or HS 2701.19 is 'the best available information' for the purpose of valuing

Fufeng's[3] energy coal factor of production."[4]  The Court elaborated that, in "undertak{ing} this

task, Commerce is to give Note 2 its due consideration as an 'integral part{}' of the Harmonized

System, and as an indispensable tool for ascertaining its meaning."[5]  On remand, we have

reconsidered Commerce's *Final Results* in this regard, and find that HS 2701.19 is the proper

---

[1] *See Neimenggu Fufeng Biotechnologies Co. v. United States*, Consol. Court No. 23-00068, Slip Op. 26-8 (January 30, 2026) (*Second Remand Order*).
[2] *See Xanthan Gum from the People's Republic of China:  Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2020-2021*, 88 FR 9861 (February 15, 2023) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).
[3] Fufeng refers to the collapsed entity, Neimenggu Fufeng Biotechnologies Co., Ltd. (aka Inner Mongolia Fufeng Biotechnologies Co., Ltd.), Shandong Fufeng Fermentation Co., Ltd., and Xinjiang Fufeng Biotechnologies Co., Ltd. (collectively, Fufeng).  *See Final Results* IDM at 2 n.4.
[4] *See Second Remand Order* at 22.
[5] *Id.* (citing *Degussa Corp. v. United States*, 508 F.3d 1044, 1047 (Fed. Cir. 2007) (*Degussa Corp.*)).

subheading for the valuation of Fufeng's coal factor of production (FOP).  This change results in a revised weighted-average dumping margin of zero percent for Fufeng.[6]  Because the separate rate for Meihua[7] was based on Fufeng's weighted-average dumping margin,[8] Meihua's separate rate is now zero percent.

## II.    BACKGROUND

On July 1, 2021, Commerce published in the *Federal Register* a notice of opportunity to request an administrative review of the AD order on xanthan gum from China.[9]  On September 7, 2021, Commerce initiated the underlying proceeding with respect to the companies for which Commerce received timely requests for an administrative review, including Fufeng and Meihua;[10] Commerce subsequently selected Fufeng for individual examination as the sole mandatory respondent.[11]

On August 5, 2022, Commerce preliminarily determined that Fufeng did not make sales below normal value during the POR and calculated a preliminary dumping margin of zero percent for Fufeng;[12] this rate was assigned to the non-examined exporters that qualified for a separate rate, including Meihua.[13]  Relevant, here, for purposes of its *Preliminary Results*, Commerce used Malaysian data to value Fufeng's FOPs, and based surrogate financial ratios, a component of its FOP calculation, on the 2021 public financial statements of Ajinomoto

---

[6] *See* Memorandum, "Xanthan Gum from the People's Republic of China:  Draft Results of Redetermination Analysis Memorandum for Fufeng for the 2020-2021 Administrative Review," dated April 3, 2026 (Calculation Memorandum).

[7] Meihua refers to the collapsed entity, Meihua Group International Trading (Hong Kong) Limited, Langfang Meihua Biotechnology Co., Ltd., and Xinjiang Meihua Amino Acid Co., Ltd. (collectively, Meihua).  *See Final Results* IDM at 2 n.3.

[8] *See Final Results*, 88 FR at 9862.

[9] *See Xanthan Gum from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 78 FR 43143 (July 19, 2013); and *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review*, 86 FR 35065 (July 1, 2021).

[10] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 FR 50034 (September 7, 2021).

[11] *See* Memorandum, "Selection of Mandatory Respondent for Individual Examination," dated October 21, 2021, at 1.

[12] *See Xanthan Gum from the People's Republic of China:  Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2020-2021*, 87 FR 47970 (August 5, 2022) (*Preliminary Results*), and accompanying Preliminary Decision Memorandum (PDM).

[13] *See Preliminary Results*, 87 FR at 47971.

(Malaysia) Berhad (Ajinomoto (Malaysia)).[14]  Energy costs were preliminarily incorporated

within the selling, general, and administrative (SG&A) expense ratio derived from Ajinomoto's

2021 financial statements.[15]

On February 15, 2023, Commerce published the *Final Results*.[16]  Therein, the agency

determined to value Fufeng's energy FOP directly, *i.e.* separately from SG&A;[17] energy inputs

(in this instance, coal) were valued using HS 2701.12.9000.[18]  This change, resulted in a revised

weighted-average dumping margin of 17.36 percent for Fufeng and Meihua.[19]  Fufeng and

Meihua subsequently challenged Commerce's *Final Results* at the CIT.  On December 16, 2024,

the CIT remanded the *Final Results*, holding that Commerce's determination to value energy

directly was unsupported by substantial evidence, and that the agency failed to address Fufeng's

arguments regarding the selection of a HS subheading for coal.[20]  On remand, Commerce further

explained its reasoning for valuing energy directly and continued to use HS 2701.12.900.[21]  On

January 30, 2026, the Court sustained, in part, and remanded, in part, the first remand

redetermination.  The Court sustained Commerce's direct valuation of energy coal but remanded

Commerce "to reconsider which of HS 2701.12.9000 or HS 2701.19 is 'the best available

information' for the purpose of valuing Fufeng's energy coal factor of production."[22]  The Court

elaborated that, in "undertak{ing} this task, Commerce is to give Note 2 its due consideration as

---

[14] *See Preliminary Results* PDM at 13-14, 21.
[15] *Id.* at 20.
[16] *See Final Results*, 88 FR at 9861.
[17] *See Final Results* IDM at 11-14.
[18] *See* Memorandum, "Fufeng Final Surrogate Value Memorandum," dated February 1, 2023 (Final SV Memorandum), at Attachment I at tab SV, cell D32.
[19] *See Final Results*, 88 FR at 9861.
[20] *See Neimenggu Fufeng Biotechnologies Co. v. United States*, 741 F.Supp.3d 1354 (CIT 2024) (*First Remand Order*).
[21] *See Final Results of Redetermination Pursuant to Court Remand, Neimenggu Fufeng Biotechnologies Co. v. United States*, 741 F.Supp.3d 1354 (CIT 2024), dated May 5, 2025, available at https://access.trade.gov/public/FinalRemandRedetermination.aspx.
[22] *See Second Remand Order* at 22.

an 'integral part{}' of the Harmonized System, and as an indispensable tool for ascertaining its meaning."[23]

On April 3, 2026, Commerce released a draft of its redetermination (Draft Results) to interested parties and provided interested parties with an opportunity to comment.  On April 10, 2026, Fufeng submitted comments supporting Commerce's Draft Results.[24]  No other interested parties submitted comments on Commerce's Draft Results.

## III.    ANALYSIS

The Court remanded for Commerce to determine whether HS 2701.12.9000 or 2701.19 is the proper subheading for the valuation of Fufeng's coal FOP.  As detailed, below, on remand, Commerce finds that HS 2701.19 is the proper subheading for the valuation of Fufeng's coal FOP.

Consistent with the *Second Remand Order*,[25] we are incorporating Fufeng's arguments as presented to the Court in Fufeng's Rule 56.2 Motion for Judgment on the Agency Record and its Comments in Opposition to the Remand Redetermination.[26]  Fufeng argued:

- Fufeng's coal had a "calorific value limit of less than 5800 Kcal/Kg."[27]
- The proper scope of HS subheading 2701.12.9000 "encompasses a subset of non-coking bituminous coal whose heat value equals or exceeds the 5,833 kcal/kg threshold limit."[28]
- Commerce's precedent, as affirmed by the Court, is to use HS subheading 2701.19 rather than 2701.12 for valuing coal with heat values below 5,833 kcal/kg.[29]

---

[23] *Id.* (citing *Degussa Corp.*, 508 F.3d at 1047).

[24] *See* Fufeng's Letter, "Fufeng's Comments on Draft Remand," dated April 10, 2026 (Fufeng Comments).

[25] *See Second Remand Order* at 22.  We note that Fufeng's agency-level arguments with respect to this issue remain absent from the record of this proceeding, and we have determined not to open the record of this proceeding. Therefore, while we consider Fufeng's agency-level filings as part of our factual determination, our analysis of Fufeng's argument will be limited to the materials filed at the CIT.

[26] *See* Fufeng's Motion for Judgment on Agency Record and accompanying Memorandum of Law, ECF No. 25 (October 30, 2023) (Fufeng's Motion) at 21-26; *see also* Fufeng's Comments in Opposition to Remand Redetermination, ECF No. 59 (June 20, 2025).

[27] *See* Fufeng's Letter, "Fufeng Section D Supplemental Questionnaire Response," dated February 16, 2022, at 6 (Fufeng Section D Supp) (emphasis removed)).

[28] *See Carbon Activated Tianjin Co. v. United States*, 547 F.Supp.3d 1310, 1315 (CIT 2021) n.6.

[29] *See Certain Activated Carbon from the People's Republic of China:  Final Results of Antidumping Duty Administrative Review; and Final Determination of No Shipments; 2019-2020*, 86 FR 73731 (December 28, 2021) (*Activated Carbon from China*), and accompanying IDM at Comment 4; *Carbon Activated Tianjin Co. v. United States*, 650 F.Supp.3d 1354, 1374-1375 (CIT 2023)).

- Commerce's "ordinary practice" is to value energy coal or steam coal under HS 2701.19.[30]

In Commerce's initial questionnaire, we requested that Fufeng respond to Appendix VII, which is a spreadsheet for summarizing FOPs and market-economy purchases.[31] Fufeng provided the requested spreadsheet for all FOPs where it described its E_COAL FOP as "COAL."[32] However, Commerce found that the variable descriptions were insufficient and, in a supplemental questionnaire, requested that Fufeng provide a detailed description for each FOP as requested in Appendix VII of its initial questionnaire.[33] In response, Fufeng reported that E_COAL was "Energy Coal."[34] However, Commerce determined that this information was insufficient to determine which HS to use to value Fufeng's coal consumption. Therefore, in a separate supplemental questionnaire, Commerce requested additional information about Fufeng's coal designation.[35] Fufeng responded to the supplemental questionnaire with the following information:

> The FOP E-COAL Fufeng utilizes for generation of energy is a type of coal that is commercially traded as a bituminous coal. Specifically, Fufeng's coal is exclusively of a non-coking grade. Fufeng does not consume coking grade bituminous coal, which is primarily used for producing coke utilized for manufacturing steel.[36]

Commerce also notes that on the record of the underlying proceeding, Fufeng stated that "the coal utilized by Fufeng as a source of energy had a calorific value limit (on a moist, mineral-matter-free basis) less than 5800 Kcal/Kg."[37]

---

[30] *See Certain Oil Country Tubular Goods from the People's Republic of China: Final Determination of Sales at Less Than Fair Value, Affirmative Final Determination of Critical Circumstances and Final Determination of Targeted Dumping*, 75 FR 20335 (April 19, 2010), and accompanying IDM at Comment 21).

[31] *See* Commerce's Letter, "Request for Information," dated October 25, 2021, at Appendix VII.

[32] *See* Fufeng's Letter, "Fufeng's Sections C, D and Appendices Response," dated December 15, 2021.

[33] *See* Commerce's Letter, "Third Supplemental Questionnaire," dated April 25, 2022.

[34] *See* Fufeng's Letter, "Fufeng Third Supplemental Questionnaire Response," dated May 2, 2022, at Exhibit 3S-5.

[35] *See* Commerce's Letter, "Fourth Supplemental Questionnaire," dated July 6, 2022, at question 1(a).

[36] *See* Fufeng's Letter, "Fufeng's Resubmission of Its Fourth Supplemental Questionnaire Response," dated July 28, 2022 (Fufeng Resubmission of Fourth Supplemental Questionnaire).

[37] *See* Fufeng Section D Supp.

In response to Commerce's request for surrogate values (SVs), Fufeng and the petitioner proposed two HS subheadings from the primary surrogate country (SC) to value Fufeng's coal FOP, *i.e.*, HS 2701.19 and HS 2701.12.9000, respectively.[38]  According to Fufeng's submission, the Trade Data Monitor describes HS 2701.19 as follows:  "Coal, Other Than Anthracite Or Bituminous, Whether Or Not Pulverized, But Not Agglomerated."[39]  According to the petitioner's submission, the Global Trade Atlas describes HS 2701.12.9000 as follows:  "-- Mineral Fuels, Mineral Oils And Products Of Their Distillation; Bituminous Substances; Mineral Waxes; -- Coal; Briquettes, Ovoids And Similar Solid Fuels Manufactured From Coal; -- Bituminous Coal, Whether Or Not Pulverized, But Not Agglomerated; -- Coal, Whether Or Not Pulverised, But Not Agglomerated: Bituminous Coal: O/T Coking Coal."[40]

Fufeng also submitted the SVs described in the SV memorandum for the preliminary results of *Activated Carbon 20-21 AR*,[41] which included certain HS subheadings (*e.g.*, HS 2701.11, HS 2701.12, and HS 2701.19) for valuing coal and their average unit values (AUVs). Fufeng's submission was not accompanied by narrative explanations for why it submitted the information to the record, and the HS subheadings for valuing coal were only one part of the SV memorandum, which also referenced the HS subheadings used for other inputs.  Absent arguments for considering an HS subheading other than the two mentioned above and absent AUVs for 2701.11 and 2701.12 from the POR, Commerce is limiting its analysis on remand to whether HS subheading 2701.12.9000 and/or HS subheading 2701.19 more accurately reflect Fufeng's coal FOP.

---

[38] *See* Fufeng's Letter, "Fufeng's First Surrogate Value Comments Resubmitted Along with Client Certs," dated March 31, 2022 (Fufeng's Surrogate Values), at Exhibit 1; *see also* Petitioner's Letter, "Surrogate Values," dated February 2, 2022 (Petitioner's Surrogate Values), at Exhibit 1.
[39] *See* Fufeng's Surrogate Values at Exhibit 1.
[40] *See* Petitioner's Surrogate Values at Exhibit 1.
[41] *See* Fufeng's Letter, "Fufeng's Final Surrogate Value Comments," dated June 29, 2022, at Exhibits 1B (citing *Certain Activated Carbon from the People's Republic of China:  Preliminary Results of Antidumping Duty Administrative Review, Preliminary Determination of No Shipments; 2020-2021*, 87 FR 27094 (May 6, 2022) (*Activated Carbon 20-21 AR*), and accompanying  Memorandum, "Fourteenth Administrative Review of Certain Activated Carbon from the People's Republic of China:  Surrogate Values for the Preliminary Results." ).

On remand, Commerce determines that HS subheading 2701.19 is more specific to Fufeng's coal FOP.  Subheading Note 2 to Chapter 27 of the World Customs Organization, Harmonized System, reference coal that more closely follows the type of coal Fufeng uses in xanthan gum production.  Specifically, HS subheading 2701.19 explicitly covers the type of coal used by Fufeng.[42]

Record evidence in the underlying review establishes that Fufeng's coal is non-coking of a type other than bituminous.  Specifically, because Fufeng explained that its coal is commercially traded as a bituminous coal,[43] Commerce assigned HS 2701.12.9000 to value Fufeng's coal.[44]  However, taking into account Note 2 to Chapter 27 of the World Customs Organization, Harmonized System, we acknowledge the weakness of assigning HS 2701.12.9000 to Fufeng's coal.  Note 2 references HS 2701.12 as bituminous coal but more importantly, as noted by the Court, coal with a heat value greater than or equal to 5,833 kcal/kg.[45]  As explained above, Fufeng reported[46] that its coal has a heat value less than 5,833 kcal/kg.  Accordingly, HS 2701.12 (and by extension HS 2701.12.9000) is not the correct HS designation to assign to the coal used by Fufeng.  Rather, we find that HS 2701.19.0000 more closely matches the type of coal used by Fufeng, because HS 2701.19 includes "Other" coal without accompanying heat value requirements; Fufeng describes it coal as having a heat value below 5,833 kcal/kg.[47] Therefore, on remand, we have valued Fufeng's coal using HS subheading 2701.19.0000.[48]

## IV.    INTERESTED PARTY COMMENTS

As noted, above, Fufeng submitted comments in support of Commerce's Draft Results.[49] No other interested parties submitted comments on Commerce's Draft Results.

---

[42] *See* Fufeng Resubmission of Fourth Supplemental Questionnaire at page 6.
[43] *Id.* at 5-9.
[44] *See* Final SV Memorandum.
[45] *See Second Remand Order* at 21.
[46] *See* Fufeng's Motion at 22 (citing Fufeng Section D Supp at 6).
[47] *See* Fufeng Section D Supp.
[48] *See* Calculation Memorandum.
[49] *See* Fufeng Comments.

## V.    FINAL RESULTS OF REDETERMINATION

Consistent with the Court's *Second Remand Order*, we have reconsidered Commerce's *Final Results* and find that HS 2701.19 is the proper subheading for the valuation of Fufeng's coal FOP.   This change results in a revised weighted-average dumping margin of zero percent for Fufeng.[50]  Because the separate rate for Meihua was based on Fufeng's weighted-average dumping margin,[51] Meihua's separate rate is now zero percent.

Because dumping margins are revised from the *Final Results*, should the CIT affirm these final results of redetermination, we intend to publish a notice of court decision not in harmony with the results of the administrative review[52] and notice of amended final results in the *Federal Register*, and issue appropriate instructions to U.S. Customs and Border Protection, consistent with the discussion above.

4/30/2026

X _Chris / Abbott_

Signed by: CHRISTOPHER ABBOTT

Christopher Abbott
Deputy Assistant Secretary
  for Policy and Negotiations,
  performing the non-exclusive functions and duties
  of the Assistant Secretary for Enforcement and Compliance

---

[50] *See* Calculation Memorandum.
[51] *See Final Results*, 88 FR at 9862.
[52] *See Timken Co. v. United States*, 893 F.2d 337 (Fed. Cir. 1990); *see also Diamond Sawblades Manufacturers Coalition v. United States*, 626 F.3d 1374 (Fed. Cir. 2010).